### BARBARA WELSCH

*v.*

### THE BELLEVILLE SAVINGS BANK.

1. WILL—*construction according to intention.* Subject to a few exceptions, the principle is firmly established that a will shall be so construed as to effectuate the intention of the testator as far as possible; and in cases of doubt, the scope of the instrument should be considered and its various provisions compared one with another in ascertaining such intention. To this fundamental rule of construction all others, with but few exceptions, must be subordinated.

2. Under the influence of this rule the express words of a will must sometimes yield to the manifest intention of the testator, and even words will be added when it is necessary to effectuate such intention. But courts, under pretence of construction, have no right to either reject or supply words, except when it is absolutely necessary to avoid an absurdity and give effect to the manifest intention of the testator.

3. The general rule is, that whenever it can possibly be done, a will should be so construed as to give effect and operation to every word and provision in it. Therefore, when the language is clear and unambiguous, and there is no conflict in its various provisions, and no absurdity will thereby be involved, the will should be given effect according to the literal terms used, taken in their general and popular sense, except where technical terms are used, in which case they should be taken in their technical sense, unless the context shows they are used in a different sense.

4. SAME—*will construed, as to character of estate devised.* Where a testator devised all of his estate to his wife "for her own free, independent and uncontrollable use and benefit for the term of her natural life," and that she might at her own wish at any time divide the same among her or her and the

testator's children or grandchildren, provided that his grandchild A should receive from the estate the wife might leave at her death, the sum of $4000 before such estate should be divided, and besides this his equal share of the remainder, it was *held*, that the wife took only a life estate in the use of the property, and that the grandson A took a vested interest as to the sum of $4000, but that the interest of A and the other children and grandchildren in the remainder was not to commence until her decease, unless she voluntarily saw fit to make the division before her death.

5.   Where a devisee for life of the free use of the testator's entire estate is expressly authorized to divide the estate among the children and grandchildren of the testator and the devisee, his widow, it by implication strongly negatives a purpose to authorize her to dispose of the estate in any other manner or to any other persons.   *Expressio unius est exclusio alterius.*

6.   SAME—*when limitation over is void.*   Where, by the terms of a will, there is given to one an estate, with unlimited power of selling or otherwise disposing of the same in such manner as the devisee may think fit, a limitation over is inoperative and void by reason of its repugnancy to the principal devise.   But this doctrine has no application to a case where a life estate has been given to the first taker in express terms.

7.   SAME—*when power of disposal does not give absolute fee.*   It may be laid down as a general rule, that in all cases where by the terms of a will there has been an express limitation of an estate to the first taker, for life, and a limitation over, any general expressions apparently giving the tenant for life an unlimited power over the estate, but which do not in express terms do so, must be regarded as referring to the life interest only, and therefore as limited by such interest.

8.   SAME—*when property devised for life must be converted into money.*   It may be stated as a general rule, that where personal property is given to one for life with a limitation over to another and is not specifically given, and is liable to perish or greatly deteriorate in value by keeping or using the same, and there is nothing to indicate an intention that the property shall be enjoyed *in specie* by the tenant for life, a court of equity will, on the application of the remainder-man, require the property to be converted into money and properly invested, giving the tenant for life all accumulations and reserving the principal for the remainder-man.

9.   When chattels are specifically given to the tenant for life he is of course entitled to their possession and use, and so long as they are used with ordinary care and prudence, the remainder-man can not be permitted to interfere, even though the use may altogether defeat his future enjoyment of the property.

10.   But when a testator gives to one for life a certain sum of money out of his estate, with a limitation over to another, the former has no right to the possession of the money thus bequeathed.   The title thereto devolves upon the

executor, and it is his duty to see that the same is properly invested, and that the annual accumulations are paid over to the tenant for life and the principal to the remainder-man upon the death of the tenant for life. United States bonds will be treated as money judiciously and properly invested by the testator.

11. REMAINDER—*in chattels.* Originally, where a chattel or other personal estate was given to one for life, with a limitation over to another, the former took the absolute title, and the limitation over was void, both at law and in equity. But in the course of time equity interposed in behalf of the remainder-man, holding the limitation over good as an executory devise, but not as a remainder. At first this rule in equity was confined exclusively to dispositions by will of chattels real, where the use had been given to tenants for life. But now courts of equity have adopted the more reasonable doctrine that where a chattel is given to one for life with a limitation over to another, the first taker really acquires nothing but a right to the use. It is still doubtful whether a remainder can be created by an ordinary deed, but such interests may be limited by deeds of trust, in which case the trustee takes the legal title.

12. The ancient doctrine which gave the tenant for life the absolute property still prevails, both at law and in equity, with respect to bequests of specific things, the use of which consists solely in their consumption, such as fruits, provisions, etc. The gift of such articles for life is said to be of necessity a gift of the absolute property, because the use and property can not exist separately.

13. TENANT FOR LIFE—*right to custody of money or United States bonds.* Where a testator devises all of his estate, real and personal, to his wife for life, with remainder over to another after her death of $4000, the wife, unless executrix, will have no right to the custody of moneys left by the testator, or to United States bonds, which are in effect money, but only to receive the accumulations of the same. And if such bonds come into her possession, whether rightfully or not, and she by her written agreement places such bonds to the amount of $4000 in the hands of a trustee to be reinvested in other bonds of the United States, the interest thereon to be paid to her for life and the principal at her death to be paid to the remainder-man, she can not afterward, as tenant for life, disturb the trustee's possession of the substituted bonds, and can not maintain replevin for the same.

14. ESTOPPEL—*to deny right of vested remainder.* Where a party claims in good faith a vested remainder in a bequest of $4000, which the tenant for life under the will entertains, and acknowledges its justice by an instrument under her hand and seal, in which she agrees that a person as trustee shall take $4000 of United States bonds left by the testator for her use for life, and invest them in other United States bonds, the interest thereon to be paid to her during her life, and the principal to be paid to the party claiming the remainder, which agreement is executed, and no fraud has been practiced

13—94 ILL.

upon her to induce the execution of the agreement thus made, she will be thereby estopped from afterwards denying the rights of the party so claiming the remainder, and can not maintain replevin against the trustee for the recovery of the substituted bonds.

15. GIFT—*when executed can not be recalled.* A mere gift or voluntary agreement is as binding as any other undertaking, when executed. If a party voluntarily agrees to make a settlement of the principal of certain bonds upon another, upon the delivery of the agreement in writing, and transfer of the bonds in pursuance thereof, leaving nothing further to be done to complete the gift, it will be to all intents and purposes an executed agreement, and the gift can not be revoked.

APPEAL from the Appellate Court of the Fourth District.

This was an action of replevin, brought by appellant against appellee, to the September term, 1878, of the St. Clair circuit court, for the recovery of certain United States bonds, amounting in the aggregate to $4000. Among the pleas filed to the declaration were the two following special pleas, designated as first and second special pleas, to-wit:

And for further plea in this behalf defendant says *actio non,* because it says that on the 25th day of February, A. D. 1878, an agreement in writing was made between one Barbara Welsch, the plaintiff herein, F. Herold, guardian for Arthur Herold, and the defendant, under the respective seals of the said parties, which was in words and figures following, viz:

"This agreement, made the 25th day of February, A. D. 1878, between Barbara Welsch, of the first part, and Ferdinand Herold, guardian of Arthur Herold, of the second part, and Belleville Savings Bank, party of the third part, witnesseth:

"That whereas Wolfgang Welsch, late of St. Clair county, deceased, by his last will and testament, among other things willed and bequeathed to Arthur Herold $4000, to have and to hold the same upon the death of said Barbara Welsch, said Barbara to have the free and uncontrollable use thereof during her natural life. Now, therefore, it is agreed and stipulated between the aforesaid parties that four United States 5-20 bonds of the issue of March 3, 1865, of the par value of $4000 in the

aggregate, be deposited for safe keeping in the Belleville Savings Bank; that Mrs. Barbara Welsch collect and receive during her natural life the interest thereon, and upon her death the said Arthur Herold to draw and receive the principal sum of $4000.

" The said Belleville Savings Bank agrees to receive and hold said bonds as a special deposit, and to collect and pay the interest accruing thereon to the said Barbara Welsch during her natural life, and after her death to deliver said bonds to the said Arthur Herold. The said Ferdinand Herold, for said Arthur Herold, agrees to pay to said Belleville Savings Bank any charge for safe keeping or collection of interest. Said bonds, which are now called in for redemption by the United States, are to be exchanged by the said bank for other United States bonds at the best rate of interest that may be obtainable, and the bonds thus exchanged are to be held by the said bank under and subject to this agreement. In virtue whereof the said parties have executed this agreement in triplicate the day and year first aforesaid.

> " BARBARA WELSCH,                [seal.]
> " F. HEROLD,                [seal.]
>     Guardian for Arthur Herold.
> " BELLEVILLE SAVINGS BANK,     [seal.]
>     By Edward Abend, President."

Of which agreement one copy was delivered to said defendant, and defendant avers that under the said agreement, and by virtue thereof, the said bonds therein mentioned were deposited by said plaintiff in said bank, and were exchanged by the said bank for the bonds now replevied in this suit; and defendant avers that under said agreement it is its duty to hold said bonds during the period of the natural life of said plaintiff, which period has not as yet elapsed, and this the defendant is ready to verify, wherefore it prays judgment, etc.

And for a further plea in this behalf defendant says *actio non*, because it says that one Wolfgang Welsch died on the — day of ——, A. D. 187-, and at the time of his death said

bonds were the property of said Welsch, and said Wolfgang Welsch left a last will and testament, which was duly probated in the probate court of said county and is now in full force, and which is in words and figures as follow:

" I, Wolfgang Welsch, of the town of Mascoutah, of the county of St. Clair and State of Illinois, of the age of sixty-five years, and being of sound mind and memory, do make, publish and declare this my last will and testament, in manner following, that is to say:

" In consideration that in regard of claims of heritage my children, three adult daughters, viz: Lisette Lucius, Therese Rutz, Katharine Villinger, together with their husbands, Rudolph Rutz and Theodore Villinger, declare themselves already fully satisfied by the pecuniary supports, loans and gifts received of me since many years until the present time, as having received each and every one of them their justly and equally distributed share:

"Now, therefore, I hereby give and bequeath all my estate, of whatever the same may consist, to my wife, Barbara Welsch, for her own free, independent and uncontrollable use and benefit for the term of her natural life, and that she may at her own wish at any time divide the same among her or our children or grandchildren: *Provided, however,* that my grandchild Arthur Herold shall receive from the estate she may leave at her death the sum of $4000, before said estate may be otherwise divided; and besides this, that the said Arthur Herold shall receive his equal share of the remainder as well as any other one of our heirs.

" In witness whereof, I have hereunto set my hand and seal, this 30th day of July, 1871.

WOLFGANG WELSCH, M. D. [seal.]

'Witness: Friedrich Jenning, Henry Beck."

And that under said will the use of all the property of said Wolfgang Welsch was given to said Barbara Welsch for her natural life, if she chose so to retain it, but with the privilege of

giving it or dividing it among her children or grandchildren, with a preference to the amount of $4000 to one Arthur Herold, her grandchild, at any time. And defendant avers that on, viz, the 20th day of February, A. D. 1878, the said plaintiff delivered bonds of the United States, of the value of $4000, to said defendant, with directions to said defendant to exchange said bonds for the bonds sued for, and to collect and pay the interest due thereon from time to time to said plaintiff during her natural life, and then deliver the same to said Arthur Herold; and defendant avers that under said directions it has taken possession of said bonds and exchanged them for the bonds in said declaration mentioned, and holds said bonds now, and this it is ready to verify, etc.

To which pleas the following replications were filed:

And the plaintiff, by way of replication to the plea of said defendant secondly above pleaded, says *precludi non*, because she says that the said Arthur Herold, in said plea mentioned, died after the execution of said writing in said plea mentioned, and before demand made by said plaintiff upon said defendant, and of which the defendant then and there had notice, and this the plaintiff is ready to verify, wherefore she prays judgment, etc.

And the plaintiff, by way of further replication to said defendant's second plea, by leave of court, etc., says *precludi non*, because she says that the said agreement in said plea mentioned was null and void, and made without consideration, and this the plaintiff is ready to verify, wherefore she prays judgment, etc.

And the plaintiff, by way of replication to the defendant's third plea, says *precludi non*, because she says that after the making of said will in said plea mentioned, and before demand made by plaintiff upon defendant for said bonds in plaintiff's declaration described, and before the vesting of any interest in said bonds in the said Arthur Herold, to-wit, on the — day of ——, 1878, said Arthur Herold departed this life, of

which the said defendant had due notice, and this the plaintiff is ready to verify, wherefore she prays judgment, etc.

To these replications the court sustained a demurrer, and the plaintiff electing to stand by her replications, final judgment was rendered against her for costs, and a writ of *retorno habendo* awarded.

This judgment, on appeal to the Appellate Court for the Fourth District, was affirmed, and appellant by appeal brings the record to this court, and assigns for error the affirmance of the judgment of the circuit court by the Appellate Court.

Messrs. HAY & KNISPEL, for the appellant:

Messrs. G. & G. A. KŒRNER, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The argument in this case has been confined to the question whether or not Arthur Herold took, under the will, a vested remainder in the $4000 therein mentioned. And it seems to be conceded that if such interest was taken by him, this action was improperly brought and the Appellate Court committed no error in affirming the judgment of the circuit court. Appellee claims that he did take such interest, and that appellant, in depositing the fund with appellee for investment, safe-keeping and payment to her of the earnings and accumulations thereof during her life, was simply performing a duty which the law would have enforced on his application; and that after having performed this duty she is bound by her action, and will not be permitted to disturb the possession and control of the fund so long as the trust is faithfully performed. This we understand to be in substance the position of appellee.

On the other hand appellant denies that Arthur Herold took any such interest, but insists that by the provisions of the will appellant was given power to dispose of the estate absolutely, and that the grant of such power by necessary impli-

cation conferred upon her a fee simple interest, and that
hence the limitation over to Arthur was inoperative and
void; that at most he took a mere contingency or possibility,
liable to be defeated at any moment that appellant might
think proper to do so; and that, therefore, appellant had the
unquestioned and exclusive right to control the fund; and
that appellee, as custodian, having no vested interest in it,
was bound to surrender it to her on demand, and that not
having done so, she has a right to maintain this action for its
wrongful detention. And this, as we understand, is substan-
tially the position of appellant.

We will consider the case on the grounds counsel have
placed it, and may possibly then give some additional views
upon a phase of it that has only in part been suggested by
counsel for appellee. Formerly wills were not construed by
the courts with the liberality they now are, in furtherance of
the intentions of testators. This is particularly true of de-
vises, properly so called; and even now, in those States in
which the legislature has not interposed by positive enact-
ment, there are still a few well recognized arbitrary rules of
construction that often defeat the manifest intentions of testa-
tors, among the most noted of which may be mentioned what
is known as the rule in *Shelly's case.* The rule of construc-
tion established by that most celebrated of cases has perhaps
contributed more than all other causes combined to defeat the
manifest wishes and purposes of those who have attempted to
make dispositions of their estates by will. Subject to these
few exceptions, however, the principle is firmly established
and universally recognized that a will should be so construed
as to effectuate the intention of the testator as far as possible,
and, in cases of doubt, the scope of the instrument should be
considered, and its various provisions compared, one with
another, in ascertaining such intention. To this fundamental
rule of construction all others, with the exceptions above
noted, must be subordinated. Under its influence, the express
words of a will must sometimes yield to the manifest inten-

tion of the testator; and even words will be added where it
is necessary to effectuate such intention. *Wright* v. *Dunn*, 10
Wheat. 204; *Bartlett* v. *King*, 12 Mass. 537; *Ruston* v. *Rus-
ton*, 2 Dall. 244. But courts, under the pretence of construc-
tion, have no right to either reject or supply words, except
where it is absolutely necessary to avoid an absurdity or give
effect to the manifest intention of the testator; for courts have
no right to make a will either by rejecting some of its pro-
visions or by adding new ones, nor by placing upon its pro-
visions an arbitrary construction.

The general rule is, that, whenever it can possibly be done,
a will should be so construed as to give effect and operation
to every word and provision in it. *Dows* v. *Swawn*, 4 Mass.
208; 2 P. Wms. 282. Therefore, where the language of a
will is clear and unambiguous, and there is no conflict in its
various provisions, and no absurdity would thereby be in-
volved, it should be given effect according to the literal terms
used, taken in their general and popular sense, except where
technical terms are used, in which case they should be taken
in their technical sense, unless the context shows they are
used in a different sense.

Looking at the will before us in the light of these well
recognized principles, it would seem there ought to be little
or no difference of opinion as to its import.

There is clearly no uncertainty as to what appellant takes
under the will—manifestly the entire estate; nor is there any
uncertainty as to the length of time for which this bequest
was made or limited; for it is expressly declared to be *"for
the term of her natural life;"* and there is almost as little
doubt as to the purpose of the gift and right of user during
this term; for it is declared in unequivocal terms to be *"for
her own free, independent and uncontrollable use and benefit."*
So far as the bequest to her is concerned, there can be no
doubt as to its character, unless such doubt is raised by the
subsequent provisions of the will.

Having thus given appellant a life estate in his entire prop-

erty, the testator then proceeds to clothe her with an express power to divide the same between certain specified persons, subject to certain limitations thereinafter mentioned, which are expressed in these words: "and that she may, at her own wish, at any time, divide the same among her, or our, children or grandchildren." While these words clothe appellant with the power in question, they also, at the same time, indicate, in unmistakable terms, the testator's intention that the estate shall ultimately be divided between their children and grandchildren, but not equally, for in the very next sentence he expressly provides that his grandchild Arthur shall receive "from the estate she may leave at her death," before any division is made with the others, the sum of $4000, and also an equal share with them in the residue.

It is supposed by appellant that the expression, "*from the estate she may leave at her death,*" strengthens the hypothesis that it was the purpose and intention to give appellant unlimited power to dispose of the entire estate in such manner as she might think proper. While this view is not altogether without force, we can not concur in it. When the several provisions of the will are considered in connection with the character of his estate, so far as it is made to appear, or may reasonably be conjectured, the expression in question may be accounted for on a more rational hypothesis. Before the occurrence of this language the testator had already, in plain and explicit terms, limited to her the *use* of the estate for the term of her natural life, and had also empowered her, "at her own wish," to divide it at any time, either before or at the time of her death. Of course, if the division was made in her lifetime, it would be at the expense of the interest in the estate which had already been given to her; and in view of this state of things, it is but reasonable to suppose that this expression was used at least in part to negative the idea or conclusion that there was any purpose on the part of the testator, by reason of having authorized this division in her lifetime, to make it obligatory on her, and thereby curtail the

life interest which he had already given to her.  It was but a cautious, indirect repetition of his already unequivocally declared intention that she was to have the estate for life, and that the children's and grandchildren's interest was not to commence till her decease, unless she voluntarily saw proper to make the division before her death.  But this expression is also to be accounted for on another ground, which doubtless operated in connection with the one we have just mentioned.

It affirmatively appears from the pleadings that the estate in question consisted in part of government bonds, which were liable to loss or destruction by accident or misfortune during her life, and it may reasonably be supposed that the estate also consisted in part of such chattels as would become greatly impaired in value from ordinary use and natural decay, so that by reason thereof the interest in remainder would necessarily consist of what remained of the estate at her death, and hence the expression in question.  And this construction is clearly sustained by authority.  See 3 Lomax's Digest, 2d ed., top page 193, and authorities there cited.

Whatever apparent room for doubt may exist by reason of the use of those words, doubtless arises in part from the fact that the provision authorizing appellant to divide the estate among the children and grandchildren intervene between the limitation to her and the limitation to them.  Had the will, after giving the life estate to her, proceeded directly to give Arthur the $4000, and to direct an equal division of the residue between him and the other children and grandchildren, and then closed by directing that his wife might make this division during her lifetime, if she saw proper to do so, there would probably never have been any doubt as to what was intended by it.

The fact that appellant is expressly authorized to divide the estate among the children and grandchildren, by implication strongly negatives a purpose on the part of the testator to authorize her to dispose of the estate in any other manner

or to any other persons. *Expressio unius est exclusio alterius.*
If he had already authorized her to dispose of the estate ab-
solutely, why tell her she could divide it among the children?
It certainly added nothing to the power he had already con-
ferred. The principle that the greater contains the less is as
true in law as in mathematics.

We fully recognize the doctrine that where, by the terms
of a will, there is given to one an unlimited power of selling
or otherwise disposing of an estate in such manner as the
devisee may think fit, a limitation over is inoperative and
void by reason of its repugnance to the principal devise. *Gay*
v. *Montague,* 3 Bro. Par. Ca. 314; *Attorney General* v. *Hall,*
Vin. 103. But this doctrine has no application to a case
where a life estate has been given to the first taker in express
terms. Redfield, in his work on Wills, expressly lays it down
that "a power of sale attached to a life estate will not have
the effect to enlarge it into a fee. And a direction that the
devisee shall have the sole use of the estate," as in the case
before us, "and that at her death it shall go to her children,
but if they are not raised, then to her husband and others,
only creates a life estate in the first devisee," citing, in support
of the text, *Jossey* v. *White,* 28 Ga. 295. It must be con-
ceded that the case at bar is a much stronger one against the
position of appellant than the one just cited. For, in the
case cited, there was not, as in the case before us, an express
limitation for life to the first taker. The same doctrine is
laid down in Lomax's Digest. In vol. 3, 2d ed., top page
317, the author says: "Although a devise to a person gener-
ally, with power to give and dispose of the estate devised as
he pleases, creates an estate in fee simple, yet where an estate
is devised to a person expressly for life with a power of dis-
posal, the devisee will only take an estate for life and a power
to dispose of the reversion." So, even if it were admitted
that the terms "her own free," "independent" and "uncon-
trollable" use gave appellant the power to dispose of the
estate absolutely, it would not follow that Arthur Herold did

not take a vested remainder. On the contrary, the authorities cited establish the very converse of that proposition. But we are satisfied that the testator did not intend by those terms to give appellant an unlimited power to dispose of the property. All that was intended by them was to give her the largest possible dominion over the estate consistent with the interest conferred upon her by the will. And it may be laid down as a general rule, that in all cases where, by the terms of a will, there has been an express limitation of an estate to the first taker for life and a limitation over, any general expressions like those in question, apparently giving the tenant for life an unlimited power over the estate, but which do not in express terms do so, must be regarded as referring to the life interest only, and therefore as limited by such interest. We are clearly of opinion, therefore, that in any view that may reasonably be taken of this case, in equity Arthur Herold had a vested remainder in the $4000 in question. We say in equity, for the whole doctrine of remainders in personal estates is a product of purely equitable growth. Strictly speaking, it is unknown to the law as contradistinguished from equity. It has been fostered and developed by courts of equity, the spiritual courts of England and the probate courts of this country, until it is deeply rooted in the jurisprudence of both countries.

Originally, where a chattel or other personal estate was given to one for life with a limitation over to another, the former took the absolute title, and the limitation over was void, both at law and in equity. In the course of time, however, equity—which has ever been a pioneer in the interest of justice and right—in the case of a devise of a chattel real to one for life with a limitation over to another, interposed on behalf of the remainder-man, holding the limitation over good as an executory devise, but not as a remainder. And even now such limitations over are not, strictly speaking, remainders; for it is as true now as then, one can not, in the

common law sense of the term, have an estate in money or a mere chattel.

The interest thus conferred, in so far as it is acquired by an express limitation over, and is not to be enjoyed in possession till a future day, is analogous to that of a remainder, and it is only called a remainder by way of analogy.

The jurisdiction of courts of equity in cases of this character was originally confined exclusively to dispositions by will of chattels real, where the use merely had been given to tenants for life. But in process of time the same relief was extended to cases where the use of other chattels had been limited in a similar manner. And finally, equity wholly repudiated the distinction between the use of a chattel and the chattel itself, and adopted the more reasonable and sensible doctrine that where a chattel is given to one for life, with a limitation over to another, the first taker really acquires nothing but a right to the use, and such is the recognized doctrine at the present time. Whether a remainder in personal estate can now be created by an ordinary deed is, upon authority, very questionable. The weight of authority seems to be against it; yet, in a hard case equity would probably find some means of untying its hands and affording the necessary relief. It is well settled, however, that such interests may now be limited by deeds of trust, in which cases the trustees take the legal title, and, at law, would be recognized as sole owners.

The ancient doctrine which gave to the tenant for life the absolute property still prevails, both at law and in equity, with respect to a bequest of specific things whose use consists solely in their consumption, such as fruits, provisions, etc. The gift of such articles for life is said to be of necessity a gift of the absolute property, because the use and property can not exist separately. 2 Kent, 353, side page. The same author says: " If such articles are not specifically given, but generally as goods and chattels with a remainder over, the tenant

for life is bound to convert them into money, and save the principal for the remainder-man."

And it may be laid down as a general rule, in all cases where the property thus limited is not specifically given, and is liable to perish or greatly deteriorate in value by keeping or using the same, and there is nothing to indicate an intention that the property shall be enjoyed *in specie* by the tenant for life, a court of equity will, on application of the remainder-man, require the property to be converted into money and properly invested, giving the tenant for life all accumulations, and reserving the principal for the tenant in remainder, upon the former's decease. Where chattels are specifically given to the tenant for life he is of course entitled to their possession and use, and so long as they are used with ordinary care and prudence the remainder-man is not permitted to interfere, even though it may altogether defeat his future enjoyment of the property. But where a testator gives to one for life a certain sum of money out of his estate, with a limitation over to another, the former has no right to the possession of the money thus bequeathed. The title thereto devolves upon the executor, and it is his duty to see that the same is properly invested, and that the annual accumulations are paid over to the tenant for life, and the principal to the remainder-man upon the former's decease.

It follows, from this view of the law, that appellant had no right to the personal custody of the moneys which her husband left at his decease unless she happened to be executrix, and that is not disclosed by the pleadings, upon which this case alone turns. Nor was she entitled to the United States bonds, for they were in effect money properly and judiciously invested by the testator before his death. As to them, it was the duty of the executor, after the payment of all debts, to pay to her the coupons thereto attached as they became due. But, inasmuch as these bonds came into her hands,—and whether properly or not is immaterial so far as this controversy is concerned,—and she voluntarily placed them in the

custody of defendant, as a trustee for herself and Arthur, in the manner set forth in appellee's pleas, she had no right, as tenant for life of the fund, to disturb the defendant's possession of it, and hence she can not maintain this action.

But there is another view, that has not been urged by appellee's counsel to any extent, that we regard as fatal to a recovery in this case. Under the pleadings, appellee was entitled to a judgment if either of the special pleas presented a good defence. The agreement set forth in the first special plea we consider a complete answer to this action, without regard to whether Arthur took a vested remainder in the $4,000 or not. In the first place, it must be conceded that there was reasonable ground to suppose that he had such interest. Arthur, through his guardian, claimed that he had. Appellant entertained this claim on her part, and by an instrument under her hand and seal conceded the justness of it, and thereby agreed that appellee should take the fund in question and invest it in other United States bonds for their mutual benefit; and this was done in pursuance of the agreement. It is not pretended that there was any fraud or overreaching, on the part of any one, by which she was induced to execute the agreement in question, and upon what principle it is now claimed that she can, without the consent of the other parties to it, avoid the obligations which it imposes, we are wholly unable to see. Having once fully and voluntarily, without any fraud or overreaching from any quarter, by her deed solemnly acknowledged the justness of his claim, and delivered the fund to appellee for him, to be delivered on her decease, she is now estopped from denying his right to it.

Under this state of facts appellant is bound, in any view we can take of the case. Suppose the agreement is regarded as a mere voluntary settlement, appellant is still bound, for the agreement is fully executed. Upon the delivery of the instrument in question and the transfer of the fund to appellee, nothing further was required at her hands to make Arthur's title complete, and it was to all intents and purposes

an executed agreement. And it is scarcely necessary to say that a mere gift or voluntary agreement is just as binding as any other undertaking, when executed.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*