*In re* ESTATE OF GEORGE CASHMAN, deceased.

*Filed at Ottawa June 12, 1890.*

1. WILLS—*rule of construction.* The main object in the construction of a will is to ascertain the intention of the testator as expressed in the instrument, and that intention must prevail, unless it is inconsistent with the rules of law. No clause of a will should be disregarded, but each clause must be considered in connection with the other provisions.

2. SAME—*of the estate devised—life estate—with right of use, and the power of disposition.* A testator devised to his wife, for life, eighty acres of land and certain personal property, in lieu of her dower and homestead, with a proviso that she might, at her election, have the land sold with other land and accept in lieu thereof $3000 in money, "to be accepted and held by her, as above provided in reference to said real estate, during her natural life," and the will then provided, "that after her death all of the said property to her devised and bequeathed (or so much thereof as may remain unexpended) to be converted into money," and the proceeds divided among the testator's children. The widow elected to take the money: *Held*, that she took the $3000 for life, with the right to its use and control, and its possession, without restriction, and also with the right to expend any part of that sum before her death, and that the use of the word "unexpended," clearly implied the power to expend the money so devised.

3. As a general rule, where a power of disposal accompanies a devise of a life estate, the power of disposal is only co-extensive with the estate which the devisee takes under the will, and means such disposal as a tenant for life can make, unless the will contains words indicating

that a larger power was intended. But a life estate may be created with power to dispose of the fee, and limit a remainder over after the termination of the life estate.

4. Where money or other property is devised to one for his or her life, and the will provides that "whatever shall remain," or all of the property so devised, or so much thereof "as may remain unexpended," the language will clearly imply a power of disposition by such devisee or life tenant, in his or her discretion.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. FREDERICK A. WILLOUGHBY, for the plaintiff in error:

When a testator gives to one, for life, a certain sum out of his estate, with a limitation over to another, the former has no right to the possession of the money thus bequeathed, nor to anything more than the interest on such sum. *Welsch* v. *Belleville Savings Bank,* 94 Ill. 206.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, for the defendant in error:

A life estate may be created with power of disposition in the life tenant, and limit a remainder over after the termination of the life estate. *Kaufman* v. *Breckenridge,* 117 Ill. 316; *Markillie* v. *Ragland,* 77 id. 98; *Hamlin* v. *Express Co.* 107 id. 443.

The use of the word "unexpended" implies the power to expend, and applies not to the interest or income of the $3000. *Markillie* v. *Ragland,* 77 Ill. 98; *Pritchard* v. *Walker,* 22 Ill. App. 294.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

George Cashman died testate, in Knox county, on the 11th day of February, 1880. His wife, Rebecca Cashman, and his son, James L. Cashman, were named executrix and executor of his will. The will was admitted to probate on the 8th day

of March, 1880, and the executrix and executor named, quali-
fied as such, and entered upon the discharge of their duties.
In the settlement of the estate, the surviving executor, James
L. Cashman, claimed in his report a credit of $3000, money
paid to the widow, Rebecca Cashman, as devisee under the
will, which the county court approved. On appeal to the cir-
cuit court, the action of the county court was reversed, but
upon a further appeal to the Appellate Court the decision of
the county court was affirmed, and we are called upon, by this
writ of error, to review the decision of the Appellate Court.

The decision of the question involves a construction of the
second clause of the will, which is as follows:

"*Second*—I give, devise and bequeath unto my beloved wife,
Rebecca Cashman, the following described real estate, to-wit,
the south half ($\frac{1}{2}$) of the south-west quarter ($\frac{1}{4}$) of section seven
(7), in township nine (9), north of range two (2), east of the
fourth (4th) principal meridian, situated in the county of Knox
and State of Illinois, together with all hereditaments and ap-
purtenances thereunto belonging or in anywise appertaining,
during her natural life; also one milch cow, to be selected by
her, and all the household furniture, of every name and nature
whatsoever, during her natural life, all of said property to her
devised and bequeathed to be received and accepted by her in
lieu of dower and homestead: *Provided, however*, that she, my
said wife, may elect to have the above described real estate
sold and conveyed by my executors hereinafter named, in con-
nection with my adjoining land or lands, (if by them deemed
for the best interests of my estate,) and accept in lieu thereof
the sum of three thousand ($3000) dollars in money, to be ac-
cepted and held by her as above provided in reference to said
real estate during her natural life, and that after her death all
of the said property to her devised and bequeathed (or so much
thereof as may remain unexpended) to be converted into money
by my executors, and the net proceeds thereof to be divided
equally between all of my children and their descendants, ac-

cording to law, except the descendants of my son John Cashman, deceased, to-wit, my grandsons George Cashman and John Cashman, who are hereinafter provided for by a specific allowance or legacy in full of all interest in my said estate."

The widow elected to have the real estate described in the will sold, and in pursuance of her election the land was sold and conveyed, and the $3000 was paid over to her in lieu of the land. It is contended on behalf of the executor of the estate, that, under the second clause of the will, Rebecca Cashman took a life estate in the $3000, with the right to use and expend so much of both principal and interest as she might think proper, and if any portion of the amount should remain at her death, such remaining portion should be distributed among the heirs, as provided in the will; while, on the other hand, it is contended by the heirs that the widow took only a life estate in the $3000, without the power of disposing of any part of the principal.

The main object in the construction of a will is to ascertain the intention of the testator, as expressed in the instrument, and that intention must prevail, unless it is inconsistent with the rules of law. It will be observed that in the first part of the second clause of the will the testator devised to his wife, Rebecca, eighty acres of land, one cow, and all his household furniture, for her natural life,—that the devise was made in lieu of dower and homestead. Then follows a proviso that the wife may elect to have the real estate sold in connection with other adjoining lands, and accept in lieu of the land $3000 in money, during her natural life. Had nothing more been said in the will by the testator, there would be much force in the contention of the heirs; but the testator, for purposes of his own, saw proper to go on and add another clause, as follows: "And that after her death all of the said property to her devised and bequeathed (or so much thereof as may remain unexpended) to be converted into money by my executors, and the net proceeds thereof to be divided equally between

all of my children," etc.   This clause in the will can not be disregarded, but in arriving at the intention of the testator it must be considered in connection with the other provisions, and after a due consideration of all the provisions, determine what the testator intended by the language used.

This court has held in a number of cases, that, as a general rule, where a power of disposal accompanies a devise of a life estate, the power of disposal is only co-extensive with the estate which the devisee takes under the will, and means such disposal as a tenant for life could make, unless the will contains words indicating that a larger power was intended.   (*Welsch* v. *Belleville Savings Bank,* 94 Ill. 191 ; *Henderson* v. *Blackburn,* 104 id. 227 ; *Kaufman* v. *Breckinridge,* 117 id. 313.)   The rule is also well established in this State, that a life estate may be created with power to dispose of the fee, and limit a remainder after the termination of the life estate.   (*Kaufman* v. *Breckinridge, supra,* and cases there cited.)   Under the will in question, in the event that the widow elected that the land devised to her should be sold, she was entitled to receive, in lieu of the land, $3000.   That the money was to be paid over to her, and that she should take the management and control of it, is, we think, plain, from the language of the will.   We do not attach any special importance to the words, "to be accepted and held by her," but as the $3000 is devised to her with no provision that it should remain in the hands of the executor, and with no limitations or restrictions whatever in respect to passing into her possession, we think it manifest that the intention was to place her in the full possession, control and management of the money.

The widow, then, being invested with the possession and control, the next inquiry is, whether she had the power or right to expend any portion of the money.   It is true that the money was willed to her during her natural life, but it is apparent, from the language of the will, that the testator anticipated that she might or would expend a part or all of the money, as the

will, in clear terms, declares, that upon the death of the widow the unexpended portion of all the property devised to her shall be converted into money and be divided between certain children of the testator. The use of the word "unexpended" clearly implied the power to expend. Had the testator intended to restrict the widow to the use, only, of the interest on the $3000, language indicating such an intention doubtless would have been found in the will, and he would no doubt have declared that upon her death the $3000 should be divided, instead of the unexpended balance of the property devised to her.

The clause in the will in question is not unlike a provision in a will passed upon in *Markillie* v. *Ragland*, 77 Ill. 102. There the testator devised his real and personal estate to his wife, during life, with power of disposal. This was followed by a provision, that upon the death of the wife, whatever might remain of the estate should descend to his heirs. In construing the will it is said: "Had he not intended that his wife should have power to sell his real estate, why speak of what should remain of it at his wife's death? * * * He, we think, clearly intended that his wife should have the unlimited discretionary power to sell any or all of his property, whether personal or real." The same may be said here. Had the testator not intended that his wife should expend any portion of the property devised to her, why speak of the unexpended portion of the property at her death?

*Walker* v. *Pritchard*, 121 Ill. 221, is also a case in point. There certain real and personal property was willed to the wife, the following language being used: "During her natural life, as aforesaid, and at the death of my said wife all the property hereby devised or bequeathed to her, as aforesaid, or so much thereof as may remain unexpended, to my two sons." In placing a construction on the language used, it is said: "We think it is manifest, from a consideration of the various provisions of the will, and in the light of the surrounding circumstances, that it was the intention of the testator that his widow

should convert to her own use, and consume, if she deemed she had occasion so to do, the residue of moneys in her possession, whether on hand at his death or realized from the notes, and that the remainder-men should only have such portion thereof, if any, as remained unexpended at the time of her death. \* \* \* We are of opinion the will in question gave to Elotia Pritchard a life estate in one hundred and sixty-eight acres of land, with power to sell and convey the same in fee, and convert the proceeds and avails thereof to her own use and benefit, with remainder in the land, if unsold under the power, and if sold, then remainder in such portion of the proceeds and avails as remained unexpended at time of death of the donee, to the two sons of the testator."

In *Henderson* v. *Blackburn, supra,* the testator devised to his wife real and personal property for life, with power to dispose of so much as she might need or wish to use, and after her death, the will provided, if anything was left it should be divided between certain persons. In construing the will, it was held that the words, "and after her death, if there is anything left," imply a power of disposition by the widow of the whole property devised. It is there said: "We find \* \* \* the words which we have adverted to, clearly indicating that a larger power of disposal was intended to be given by the will than that of a life estate,—a power of disposal of the fee,— and hence that the case does not come within the doctrine relied upon, limiting the right of disposition to the life estate, where there is a power of disposal accompanying a devise of a life estate."

In other States the same rule in similar cases has been announced. In *Clark* v. *Middlesworth*, 82 Ind. 240, the Supreme Court of Indiana, in deciding the case, said: "We think it quite clear that the will of O. B. Clark gave to his widow, Mary A. Clark, a life estate in said lot, and that it also gave her, by the clearest implication, a power to dispose of the same. The words, 'and at her death, should anything remain,' are

senseless and without meaning, unless the testator intended that the tenant for life might, prior to her death, dispose of the property devised to her for life. The words clearly show that he must have contemplated this at the time, and therefore have intended it."

In *Harris* v. *Knapp*, 21 Pick. 412, the Supreme Court of Massachusetts, in deciding a case where similar words are used in a will, said: "The words, 'whatever shall remain,' necessarily mean that portion of the property bequeathed which shall be undisposed of at her decease, but there is no allusion in the will to any mode by which the sum thus given (during her life) is to be diminished, except the disposition thereof to be made by Mrs. H. (the life tenant), and therefore the implication is inevitable, that she had a power to make such disposition. This is inconsistent with the supposition that the whole was to remain undiminished in the hands of the executor, or other trustees, for the purpose of satisfying the gift over." See, also, *McKenzie's Appeal*, 41 Conn. 607 ; *Ramsdell* v. *Ramsdell*, 21 Me. 288.

From the authorities cited, after a careful examination of the language of the will, we are satisfied that the proper construction to be placed upon the second clause of the will conferred upon Rebecca Cashman, upon a sale of the eighty acres of land, the right to take and hold the $3000, and expend for her own use and benefit the income therefrom, and so much of the principal as her necessities might demand or her judgment dictate, and that portion of the $3000 which shall remain unexpended at her death, and that only, was to be divided between the children of the testator in the manner declared in the will.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*