WILLIAM I. VANATTA *et al.*

*v.*

SARAH CARR *et al.*

*Opinion filed October 23, 1906.*

WILLS—*when use of the words "whatever remains" does not enlarge life estate.* The use of the words "whatever remains of the estate," or "all that remains of my estate and effects," in disposing of the remainder after the death of the widow, to whom a preceding clause of the will has devised all the testator's estate "during her natural life," does not enlarge the life estate of the widow where no power of disposition is expressly or impliedly conferred by the will, and in such case the widow has no right to invest the personal property in real estate and take title in fee in her own name. (*In re Estate of Cashman,* 134 Ill. 88, and *Markillie* v. *Ragland,* 77 id. 98, distinguished.)

Appeal from the Circuit Court of Jasper county; the Hon. Truman E. Ames, Judge, presiding.

The bill in this case alleges that William T. Cowger died testate March 31, 1899, leaving Sarah Ann Cowger his widow, Alva B. and David M. Cowger his sons, and complainants and John W. Lee his grandchildren, his only heirs-at-law surviving him, and that the widow has since intermarried with one Hamilton Carr. The will of said William T. Cowger set out in the bill is as follows:

"*In the name of God, Amen*—I, William T. Cowger, of the town of Rose Hill, in the county of Jasper and State of Illinois, of the age of sixty-one years, and being of sound mind and memory, do make, publish and declare this my last will and testament in the manner following, that is to say:

"*First*—I give and bequeath to my wife, Sarah Ann, all my estate, both real and personal, of every name and nature, during her natural life, except as hereinafter mentioned.

"*Second*—I will and bequeath to my son Alva Bennett a support, food and raiment until he is of the age of twenty-one years. Then upon arrival at the age of twenty-one years I will that he have an average pair or team of horses, or their equivalent in money, also one bed and bedding, and at the death of my wife, Sarah Ann, whatever remains of the estate, both real and personal, to be transferred and belong as follows: I will and bequeath to my grandson John William Lee one-eighth part of my estate, provided, however, that he shall live to the age of twenty-one years, otherwise to revert to my original estate.

"Lastly, that all that remains of my estate and effects be equally divided between my children, to-wit: Sarah Almina Vanatta one-third part; (2) David Madison Cowger one-third part; (3) Alva Bennett Cowger one-third part; and lastly I do hereby nominate and appoint Kenison Vanatta to be the executor of this my last will and testament, hereby revoking all former wills by me made.

"In witness whereof I have hereunto set my hand and seal this 14th day of March, 1899.　　　　William T. Cowger. (Seal.)"

The bill then alleges that at the time of his death William T. Cowger was the owner of 123/4 acres of real estate therein described, "and about $3000 in money as the net proceeds of his personal estate after the payment of all debts and legal charges against said estate," which was turned over to the

223—11

widow by the executor named in the will; that the widow
has been in the possession of the real estate ever since the
death of her husband and collected and received the rents and
profits thereof; that about May 15, 1899, which was a month
and a half after the death of William T. Cowger, she took
the money turned over to her by the executor and invested it
in 36.98 acres of land, particularly described in the bill, and
took the title to the said land in her own name. Complain-
ants further allege in the bill that they are informed and be-
lieve said widow, Sarah Carr, made and delivered to John
W. Ward, in the fall of 1903, certain deeds to the heirs of
the said William T. Cowger for the purpose of dividing the
land described in the bill between said heirs, and that she in-
structed Ward to deliver the deeds to the grantees at her
death; that said deeds made a division of the land different
from the provisions of the will and favorable to David M.
and Alva B. Cowger and John W. Lee. The bill further
alleged that afterward, in 1905, said Sarah Carr made and
was about to deliver to Alva B. Cowger a deed to the 36.98
acres described in the bill, without any consideration except
the note of said Alva B. Cowger; that since the purchase of
said tract of land with the money received from the personal
estate of her deceased husband said land had greatly in-
creased in value; that she was about to sell it to the said
Alva B. Cowger for at least $1000 less than its fair cash
market value, and that said Sarah Carr threatened to spend
and waste the proceeds of the sale of the said lands; that
said Alva B. Cowger had arrived at the age of twenty-one
years, and said Sarah Carr claims to have settled with him
by giving him the food, raiment, bed and bedding and team
of horses as provided for in said will, and charges that she
had given said Alva B. more than he was entitled to under
said will; that she claims the said will does not express the
intention and desire of the testator as he had expressed them
to her before his death, and that she proposed to divide the
property and distribute it as she pleased, regardless of the

will; that she said she intended and would give Alva B. Cowger and John W. Lee more property than is due them under the will, and threatens to do as she pleases with all of said property during her lifetime, and to spend and waste it and deprive complainants of their share of it under the will. The bill charges that Sarah Carr is not entitled to any portion of the principal of the estate of her deceased husband nor to the possession of it, but only to the income from its use, after making the provisions for Alva B. provided for in the will of said William T. Cowger, and that she is not entitled to any increase in the value of the personal estate or of any investment of it made by her. The bill then prays that said Sarah Carr be required to account for all funds received by her from said William T. Cowger's estate and her use and application thereof; that the land purchased with the proceeds of the property left by William T. Cowger, together with any increased value thereof, be declared trust property for the use of the beneficiaries named in the said will, subject to the income thereof to be paid to Sarah Carr during her life, and that said Sarah Carr be required to give bond for the faithful care and management of said estate and for the faithful accounting for any funds that may be found to be in her hands, and upon her default therein that the court appoint a trustee to take and hold the title and manage, rent and care for the property, and pay over the proceeds in accordance with the terms of the will; that the title to the 36.98 acres described in the bill be decreed to be in the heirs of said William T. Cowger or the trustee appointed by the court, for the uses and purposes set forth in the will, and that the deed to said Sarah Carr to said tract be set aside and declared null and void, also any deeds she may have made for said lands to any other persons, and for general relief.

The circuit court sustained a demurrer to the bill and dismissed the same for want of equity, and complainants bring the case here by appeal.

ANDREWS & VAUSE, for appellants:

Power of sale conferred on a life tenant must be expressly given by the will or clearly implied from its terms, and no such power exists without one or the other. 22 Am. & Eng. Ency. of Law, (2d ed.) 1094; *Skillman* v. *VanPelt,* 1 N. J. Eq. 511; *Booraem* v. *Wells,* 19 id. 87.

The question whether a power of sale or mortgage over the reversion is given to the owner of a life or other limited estate depends solely upon the construction of the instrument under which the power is claimed. 22 Am. & Eng. Ency. of Law, (2d ed.) 1156.

The extent of the power is likewise dependent upon the terms of the instrument creating it. 22 Am. & Eng. Ency. of Law, (2d ed.) 1156.

A life tenant or owner of other limited estate has no power, unless expressly or impliedly granted, to execute a lease which will be binding on the remainder-man. 22 Am. & Eng. Ency. of Law, (2d ed.) 1157.

The words "what remains" do not always imply a power of disposition. They may refer only to natural losses or to what is left after specific legacies, and not to property to be disposed of by the legatee or devisee. 30 Am. & Eng. Ency. of Law, (2d ed.) 736; *Greene* v. *Hewitt,* 97 Ill. 117; *Bramell.* v. *Adams,* 146 Mo. 70; *Bramell* v. *Cole,* 136 id. 201; *Matter of Skinner,* 81 N. Y. App. 449.

ALBERT E. ISLEY, for appellees:

Such a construction should be adopted, if it can be reasonably done, as will give force and effect to every word and clause of the will, and if a prior clause and a subsequent clause are repugnant, the former should be restrained or modified by the latter. *Morrison* v. *Schorr,* 197 Ill. 554.

A life estate may be created with power of disposition in the life tenant and limit a remainder over after the termination of the life estate. *Fairman* v. *Beal,* 14 Ill. 244; *Funk* v. *Eggleston,* 92 id. 515; *Hamlin* v. *Express Co.* 107

id. 443; *Henderson* v. *Blackburn,* 104 id. 227; *Markillie* v. *Ragland,* 77 id. 98.

It depends upon the intention to be gathered from the whole instrument, in the light of the circumstances surrounding the testator, whether the power be given. *Kaufman* v. *Breckinridge,* 117 Ill. 316.

A power of sale need not be conferred in express words. If, from all the provisions of the instrument, it is clear that the intent was to clothe the donee with the power of disposition, such intent will be effectuated. 18 Am. & Eng. Ency. of Law, 901, and cases cited; *Cherry* v. *Green,* 115 Ill. 591; *Hamilton* v. *Hamilton,* 98 id. 254.

Mr. JUSTICE FARMER delivered the opinion of the court:

The question to be determined here is what interest and estate the widow of William T. Cowger (now Sarah Carr) took, under the will, in the personal property left by him at the time of his death. The real estate owned by William T. Cowger at the time of his death is not involved in this controversy. Complainants' contention is, as will be seen from their bill, that she did not take the property absolutely nor with power to sell and dispose of it, but only a life estate in it, subject to the charge made in the second clause of the will, and that she was not entitled to its possession and control, but that it should have been invested and the income from it paid to her during her life. Defendants contend, that by the terms of the will Mrs. Carr was given the power to manage, control and sell all the property at her own discretion, subject only to the provision made in the second clause for Alva B. Cowger, and appropriate the proceeds for such purposes as she saw fit, free from any claim of John W. Lee or the other heirs of the testator mentioned in the last clause of the will. This contention is based chiefly on the words "whatever remains of the estate," in the second clause of the will, and the words "all that remains of my estate," in the third or last clause, and it is argued that these words clearly

imply that the testator intended to confer the power upon his widow to sell and dispose of the property during her lifetime and appropriate the proceeds of it to such purposes of her own as she chose. We cannot place any such construction upon this will. It was said in *Howe* v. *Hodge,* 152 Ill. 252: "The polar star in the interpretation of a will is the intention of the testator. This intention is to be gathered from the words and expressions used in the will itself. The different provisions and parts of the instrument are to be compared with and read in the light of each other, so as, if possible, to deduce therefrom an harmonious whole." The intention of the testator as expressed in the will, if it can be ascertained from the instrument itself, must govern in its construction, if not inconsistent with the rules of law. (*In re Estate of Cashman,* 134 Ill. 88.) This court said in *Dee* v. *Dee,* 212 Ill. 338, that adjudged cases are of but little assistance in determining the construction to be given a will because of the different conditions surrounding the testator and his property, and we may add also, the difference in the language used in different wills and the connection in which it is used.

The first clause in the will reads: "I give and bequeath to my wife, Sarah Ann, all my estate, both real and personal, of every name and nature, during her natural life, except as hereinafter mentioned." Standing alone, this clearly shows the intention of the testator to be, that, with certain exceptions to be thereafter named, the widow should have only a life estate in his property. In the second clause he bequeaths his son Alva support, food and raiment until he should become twenty-one years old; also, on his becoming of that age, an average team of horses or their equivalent in money, and one bed and bedding. Then, as part of the said clause, this language immediately follows: "And at the death of my wife, Sarah Ann, whatever remains of the estate, both real and personal, to be transferred and belong as follows: I will and bequeath to my grandson John

William Lee one-eighth part of my estate, provided, however, that he shall live to the age of twenty-one years, otherwise to revert to my original estate. Lastly, that all that remains of my estate and effects be equally divided between my children, to-wit: Sarah Almina Vanatta one-third part; (2) David Madison Cowger one-third part; (3) Alva Bennett Cowger one-third part."

Unless the words "whatever remains of the estate" after the death of the testator's widow, in the second clause, or the words "all that remains of my estate and effects" be equally divided, etc., in the last clause, show the testator's intention to have been to give his wife more than a life estate in his property, then his intention as expressed in the first clause must determine the construction of this will. If no exception had been made from the life estate given the widow in all his property by the first clause, and the second and last clauses had disposed of all that remained of his estate after the death of his widow to his heirs, there would have been more force in the position of defendants. As written, the clear meaning of the will is that, except a sufficient amount of his property to support, board and clothe his son Alva until he was twenty-one years old, and on arriving at that age to furnish him an average team of horses or their equivalent in money, also a bed and bedding, his widow should have a life estate in all his property, real and personal; or, differently expressed, its meaning is, that, except as to the charge made against his estate in favor of his son Alva, his widow should have a life estate in his property.

*In re Estate of Cashman, supra,* much relied on by defendants, where a life estate is given the widow and "so much thereof as may remain unexpended" at the death of the life tenants given to the heirs of the testator, is not conclusive of this case. In that case it was held that the language used showed the intention of the testator to have been that his widow, to whom the life estate was given, should have the right to expend a part, or, if necessary, all, the

corpus of the property; that the word "unexpended" clearly implied the power to expend. It was there held, however, that the will did not give her the absolute title to the property, which was personal, but that if at her death any of it was unexpended it should be divided in the manner directed by the will.

In *Markillie* v. *Ragland,* 77 Ill. 98, the direction of testator that whatever remained of his estate after the death of his wife should descend to his heirs, followed a clause giving the wife a life estate with power to manage it at her discretion and deal with it as though she were sole owner. The court held the widow took a life estate with power to sell. And so it will be found that in all cases where the words "if anything is left," or "whatever remains," etc., have been held to show an intention of the testator to confer a power on the life tenant to sell, it has been because those words, in their ordinary and common acceptation and in the connection in which they were used, could not reasonably be given any other meaning. In those cases, however, will be found no warrant for defeating the claims of the remainder-men except by a disposition of the property in pursuance of the power. We know of no case where it has been held this could be done by merely changing the character of the property,—by converting it from one form into another,—and taking the title in the life tenant's name. Here the will does not by any express words invest the widow of the testator with power to expend, sell or dispose of any of the property in which she is given a life estate. What the powers of a person are to whom a life estate is given in personal property, with reference to the disposition of the property, depends to some extent upon the character of the property. This court said in *Dickinson* v. *Griggsville Nat. Bank,* 209 Ill. 350: "A specific bequest, for life, of chattels of such nature the use whereof consists in their consumption or their destruction, may carry the absolute title, (citing authorities;) but where the bequest is not of specific articles of

property, but of the residue, which consists, in part, of chattels not of a durable nature, the gift is not of the absolute title of the consumable chattels and for life of the durable, but is of the income or use for life, and the property is reserved for the remainder-men; and in such case, if the property, or a portion of it, is of that character that it will be consumed or will perish in its use, it may be ordered to be sold and the income paid to the life tenant and the principal secured for the remainder-men,"—citing *Burnett* v. *Lester*, 53 Ill. 325; *Welsch* v. *Belleville Savings Bank*, 94 id. 191; *Buckingham* v. *Morrison*, 136 id. 437.

Just what the character of the testator's personal property here involved was at the time of the testator's death is left in some doubt by the averments of the bill. The bill avers that at the time of his death William T. Cowger was seized and possessed of certain real estate therein described, "and about $3000 in money as the net proceeds of his personal estate after the payment of all debts and legal charges against said estate." Whether this $3000 was all money on hand at the time of the testator's death, or whether part of it was "net proceeds of his personal estate" converted into cash by his executor, is not clear. However that may have been, it does appear from the averments of the bill that at the time he turned it over to the widow, less than two months after the testator's death, it was all cash.

A case as nearly in point as any we have examined is *Green* v. *Hewitt*, 97 Ill. 113. In that case the testator gave his widow all his personal property so long as she remained his widow, and directed that "at the expiration of that time the whole, or whatever remains, to descend to my daughter, Mary Thompson." It was there insisted that the words "or whatever remains" showed the intention of the testator to have been to give his widow the absolute property in his estate, but the court held that she took only a life estate, and said: "The misapprehension as to the legal effect of the devise doubtless grows out of the use of the expression

'whatever remains,' by the testator, in limiting the remainder to his daughter. The use of that expression is of no vital significance, and cannot be permitted to override the clearly expressed intention that the widow should take a life estate only." Similar expressions received consideration in an elaborate opinion in *Welsch* v. *Belleville Savings Bank,* 94 Ill. 191.

To say that the widow of William T. Cowger had the right to convert the personal property into real estate, take the title in her own name and control and dispose of it as she thought proper, would also require holding that she would have the same power with reference to the real estate, for she received her title to both the real and personal property in the same clause, from the use of the same words,— and this is the position sought to be maintained by her in this case. We find no warrant from any language used in the will by the testator for any such construction to be placed upon that instrument. If he had so intended, why qualify the bequest by the use of the words "during her natural life?" It is a cardinal rule in the construction of wills that the testator's intention, as indicated by the words used, shall be ascertained from a consideration of the entire instrument, and each clause, sentence and word thereof be given meaning and effect if it can be done. (*Dee* v. *Dee, supra; Young* v. *Harkleroad,* 166 Ill. 318; *Einbecker* v. *Einbecker,* 162 id. 267.) Applying these rules to the construction of this will, what meaning is to be given the words in the first clause limiting the estate given his widow, "during her natural life?" If defendants' construction is correct then this clause must be held to be meaningless. It is clear the testator intended these words to mean something, and it is the duty of courts, in construing wills, to give the words used their ordinary and generally accepted meaning, unless a clear intention appears from the will that they were intended to be used in another sense. (*Roberts* v. *Roberts,* 140 Ill. 345; *Bates* v. *Gillett,* 132 id. 287.) There is no repugnancy between the

first and subsequent clauses of this will. The subsequent clauses clearly show the testator's intention to have been that at the termination of the life estate in the property in controversy, and after the bequests made his son Alva had been satisfied, the remainder of the estate should go to the persons named in the will.

Whether, if the personal estate had been preserved in the condition it was left by the testator, the widow would have had the right to its possession during her life, and whether she would have had the right to use any of the corpus of the fund for her support and maintenance, is unnecessary now to be determined. By the averments of the bill Alva has arrived at the age of twenty-one years, has received the provisions made for him by his father's will, and the widow has invested the entire remainder of the personal estate in lands, the title to which she took in her own name and which she now claims to own and control, and threatens and is about to dispose of contrary to the provisions of the will, and wholly deprive complainants of any interest therein. To permit this to be done would be a palpable violation of the plain intention of William T. Cowger as expressed in his last will and testament. If the averments of the bill are true that the land purchased by Mrs. Carr was purchased wholly with the personal property left by her husband, the title should be placed in her for life with remainder in fee in those entitled to it under the provisions of the will. We see no good reason for the appointment of a trustee to manage and control the estate or requiring Mrs. Carr to give security for the protection of the remainder-men if the facts are as averred in the bill. She would be entitled to the use, rents and profits of the land, and should be given its possession and management during her life. The cancellation of all deeds made by her purporting to convey title to other persons and vesting in her a life estate, with remainder to those entitled to it under the will, would prevent any disposition of the fee by her, even if she were inclined to dispose of it.

One of the children of the testator mentioned in the will as beneficiary, subject to the widow's life estate and the charge in favor of the son Alva, is Sarah Almina Vanatta. There is no direct averment in the bill that she has since died and that complainants are her only children and heirs-at-law. It is averred that complainants and defendants are the only heirs-at-law of William T. Cowger. This averment, though it leaves the fact obscure, we have treated as equivalent to an averment that Sarah Almina Vanatta had died intestate before the commencement of the suit, leaving the complainants as her only children and heirs-at-law. If this be correct it could be made clear by a simple amendment, and we have thought the rights of the parties are of such importance in this case that they should be determined on their merits.

We are of opinion the court erred in sustaining the demurrer, and the decree dismissing the bill will be reversed and the cause remanded to the circuit court with directions to overrule the demurrer, and for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*