(No. 24705.—

WILLIAM J. QUIGLEY *et al.* Appellants, *vs.* CHARLES L. QUIGLEY *et al.* Appellees.

*Opinion filed December 15, 1938.*

AUSTIN E. TORNEY, (HARRY F. BREWER, of counsel,) for appellants.

CRAPPLE & CRAPPLE, (HERMANN P. HAASE, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Appellants, nephews of the testatrix, filed in the circuit court of Cook county, a bill to construe the will of Alice M. Quigley, deceased. The will, written in longhand by the testatrix, provides: "I hereby give, devise and bequeath to my brother, Charles L. Quigley, all my property, real estate, personal and of whatever form for his personal use during his lifetime." It then provides for the payment of all her debts and obligations and the expenses of her last sickness and death, and provides for the payment of $100 to the Catholic Extension Society for masses for the repose of her soul. The will further provides: "After the death of my brother, I wish that whatever is left of my estate be divided among my four nephews." The question presented is the extent of the interest given to Charles L. Quigley. The circuit court held he was given a life estate with full power to dispose of the *corpus* of the estate during his lifetime, by proper deed or deeds of conveyance, but not by his last will or testament. It is the contention of appellants that Charles was given only a life estate, with no power to dispose of the *corpus*.

The testatrix was a spinster sixty-nine years of age at the time of her death. She had been a teacher in the public schools of Chicago for about thirty years and had retired a few years before her death. She lived with her brother Charles, for the last seven or eight years of her life. Charles and her four nephews were her only heirs and next of kin. Her estate consisted of two vacant lots worth about $1000 each, and personal property valued at approximately $29,000. The personal property included capital stock in various corporations, of a market value of $27,000, and the rest consisted of bank deposits, checks and a promissory note.

In determining the interests created by the will, we must ascertain and give effect to the intention of the testatrix as expressed by all the provisions of the will, interpreted

in view of the circumstances surrounding the testatrix. (*Hollenbeck* v. *Smith,* 231 Ill. 484.) Appellees argue that the expressions "for his personal use during his lifetime" and "whatever is left of my estate" show an intention to give the life tenant a power of disposal of the *corpus* and to give the nephews only so much as the life tenant should not dispose of in his lifetime. It is contended that "for his personal use during his lifetime" has a different and larger meaning than "for his lifetime," in that it means the life tenant may "use up" the estate. No authority is cited in support of this contention. In several analogous cases similar language has been employed, and in none of them has it been suggested that such language has a different meaning than the usual words creating a life estate. In *Welsch* v. *Belleville Savings Bank,* 94 Ill. 191, the language was "for her own free, independent and uncontrollable use and benefit for the term of her natural life." In *Thompson* v. *Adams,* 205 Ill. 552, the language was "for the sole use and benefit of my wife, Elizabeth Adams, so long as she shall live and remain my widow." In *Strickland* v. *Strickland,* 271 Ill. 614, the property was devised "for her use during the term of her natural life, she to have absolute control of same during her lifetime." It is our opinion that a gift "for his personal use during his lifetime" has no different meaning than "for life." No significance is to be attached to the words employed here. It cannot be said that those words manifest an intention to add to the life estate a power to consume or dispose of the *corpus* of the estate.

It is next argued by appellees that the words "whatever is left" show an intention to create a power of disposal. Appellants agree the rule is that when a will creating a life estate contains a subsequent clause granting remaindermen whatever is left of the estate, no power to dispose of the *corpus* of the estate is created unless the expression "whatever is left" can be given no other reasonable meaning than

that of a grant of such power of disposal. (*Vanatta* v. *Carr, 223* Ill. 160.) Here the expression "whatever is left" can, in our opinion, be given another reasonable meaning. After creating a life estate the will provides the life tenant, as executor, shall pay all the debts and obligations the testatrix may have incurred, including the expense of her last sickness and death. She also directs the payment of $100 to a certain society for the saying of masses. The amount of such payments was uncertain, and they would undoubtedly result in a diminution of the *corpus* of the estate. She then gave to her nephews "whatever is left." The reasonable meaning of this expression, as used here, is that she meant "whatever is left" after the specified payments had been made and after her brother had enjoyed the use of and returns from her property during his life. She might also have foreseen that some of the assets would be destroyed or diminished in value through insolvency of the corporations, banks or the maker of the note, or in some other manner. We cannot agree that the creation of a power of disposal of the *corpus* is the only reasonable meaning that can be given to this expression. There is, in the will before us, no provision, either preceding or following the words "whatever is left," which indicates any purpose of the testatrix to vest Charles L. Quigley with a power of sale or disposal. There is here no doubtful power of sale which can be made a certain one by a consideration of these words in the will. *Thompson* v. *Adams, supra.*

It is further argued that the will, when read in the light of the surrounding circumstances, including the nature of the property and the relationship of the parties, shows an intention to create a power of disposal of the *corpus*. The substance of this argument in regard to the circumstances is that the testatrix had lived with Charles for the last seven years of her life, the income from the estate was small and her relations with the nephews were strained, so that she did not intend to give Charles merely a life estate

and the *corpus* to the nephews. Much of the evidence on which this argument is based is not convincing. The only evidence which might indicate the existence of a strained relation between the testatrix and appellees is the testimony of the woman who had been housekeeper for the testatrix and Charles for three and one-half years immediately preceding testatrix's death, that testatrix and appellees had not visited each other during that time. She could not possibly have known of all the visits made by or to testatrix. Moreover, shortly before making her will, the testatrix loaned appellee Vernon J. Quigley, $1410, and gave him a larger share of the remainder than any of the other remainder-men. The only evidence as to the income from the estate is the bare statement of Charles that the first year the income was $500. If this be true, it is of little significance. The financial condition of Charles or of the nephews is not shown. It is true that the testatrix lived with Charles for seven years prior to her death, but it is not shown that he supported her. The housekeeper testified she was paid by the testatrix. There was testimony that the testatrix had made statements that she wanted to leave everything to Charles. This evidence was clearly incompetent, for statements of the testatrix, either before or after the making of the will, cannot be received to prove what she intended by the written words of the will. (*Peet* v. *Peet,* 229 Ill. 341.) The chancellor reserved his ruling on the competency of this testimony and, in announcing his decision, stated he had reached his conclusion without considering it, and had arrived at the same conclusion by considering the entire record. This testimony should have been disregarded, but we would not reverse the cause on this ground, alone, inasmuch as the chancellor reached the same result from a study of only the competent evidence.

It is argued by appellees that the character of the testatrix's property is such that unless the power of disposal is granted, the life tenant can receive but little benefit from

the estate. In support of this contention the life tenant says that $500 was cash in bank, upon which no interest is being paid, and that it is absurd to think that the testatrix would want him to keep the money on deposit during his entire life just for the benefit of the remaindermen. One or two other items of property are also mentioned in this category. The contention of the life tenant is predicated upon an erroneous view of the law. It is well settled that a gift of the use of money to a life tenant is a gift of interest and not of the *corpus*. A life tenant has, under proper restrictions, the right to invest and reinvest money or its equivalent in order that his bequest may be made remunerative. It would be idle to say that he must leave such assets dormant. The executor or trustee, as the case may be, is bound to invest the money for the benefit of the usee. If the life tenant desires to have possession of the property he may do so under such reasonable restrictions as the courts may impose. The matter of requiring security is now, ordinarily, one of discretion with the court having jurisdiction over the property. 17 R. C. L. "Life Estates," sec. 17, p. 626, *et seq;* 21 Corpus Juris "Estates," sec. 245, p. 1040; *Scott* v. *Scott,* 137 Iowa, 239, 23 L. R. A. (N. S.) 716, and annotations thereto; *Welsch* v. *Belleville Savings Bank, supra.*

After considering the entire will and all the competent evidence of the surrounding circumstances, we conclude the will created only a life estate in Charles L. Quigley, with a remainder to appellants.

The decree is reversed and the cause is remanded to the circuit court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*