In the Matter of the Estate of Maurice Pohn, Deceased. Jerome B. Reich, M.D., Claimant-Appellee, v. Leonard Barnett, Administrator-Appellant.

Gen. No. 50,787.

First District, Second Division.

January 25, 1966.

Henry W. Kenoe and Raphael Fine, of Chicago, for appellant.

Gregory A. Gelderman, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Jerome B. Reich, M.D., filed an amended claim for $3,500 in the Estate of Maurice Pohn, deceased, saying:

(1) that decedent was indebted to him in this amount for usual customary and reasonable charges for medical care for the period July 1, 1962 to January 23, 1964 and (2) in the alternative, that on or about July 1, 1962, decedent orally promised to pay claimant $25 for each visit for medical care and that at his death decedent was indebted to claimant in the sum of $3,500 for visits to the home of decedent between July 1, 1962 and January 23, 1964. An answer by the administrator denied that decedent was indebted in the amount claimed; asserted that claimant was paid in full for all services; that he had no knowledge sufficient to form a belief as to whether decedent orally promised to pay claimant $25 for each visit; denied that decedent was indebted to claimant on January 23, 1964 in the amount of $3,500 for visits made by claimant to the home of decedent between July 1, 1962 and January 23, 1964; and alleged that claimant was paid for all visits made "at least to and including November 30, 1963." As an additional defense the administrator set out that decedent made payments to claimant by checks on February 24, 1963, of $100, and on November 30, 1963, of $100, and that these checks paid claimant in full to the respective dates on which they were issued and that claimant was fully paid by the decedent for all services to and including January 23, 1964, except for an unpaid balance of "three hundred some odd dollars." A trial resulted in an order allowing the claim of Dr. Reich for $2,800 to be paid in due course of administration. The administrator, appealing, asks that we modify the order by reducing the amount allowed to Dr. Reich to not to exceed $395.

Dr. Reich supported his claim by the testimony of Irving Fenchel and Selma Samuel. The decedent and Fenchel were friends for many years and resided in the same apartment at the Park Lane Hotel in Chicago. Fenchel testified that decedent was in severe pain on

July 1, 1962, and Fenchel called the claimant, who came to the apartment. He examined the decedent. The decedent asked Dr. Reich what he owed him and the latter said that he charged $25 for house calls and that the decedent said that he had no objection and asked the Doctor to do what he could for him. Fenchel further testified that claimant came to the apartment from 150 to 160 times between July 1, 1962 and January 23, 1964; that decedent was always in severe pain; that decedent was not attended by any other physician during this period and that he did not leave the apartment except to go for an occasional automobile ride. Fenchel, continuing, testified that claimant was required to and came at night to decedent's apartment and gave him sedation; that some weeks claimant came to see the decedent three or four times; that the number of times claimant called to see decedent varied and was dependent upon the physical condition of the patient. On cross-examination Fenchel was asked if he had a claim against the Estate. An objection was sustained on the ground that it was immaterial, irrelevant and not proper cross-examination. An objection was also sustained to inquiry as to whether Dr. Reich was to testify for Fenchel on his claim. No offer of proof was made by the administrator after these objections were sustained. On cross-examination, Fenchel testified that decedent never paid claimant anything for any of the visits; that the only time decedent gave claimant "anything was for the Heart Fund. I think it was a hundred each time for the Fishman's Heart Fund."

The second witness called by claimant was Selma Samuel, who had been keeping company with the decedent since 1940 and saw him constantly in the apartment at the Park Lane Hotel. She testified that commencing July 1, 1962, she visited the apartment four times a week and sometimes seven nights a week; that she would arrive from 5:30 to 6:00 p. m.; that she used to cook

230

meals for decedent, Fenchel and herself and that it was hard to figure the number of times she was in decedent's apartment but that her best judgment was that she saw Dr. Reich in the apartment from 75 to 100 times between July 1, 1962 and January 23, 1964. Miss Samuel stated that she never saw decedent pay the claimant anything, nor did the decedent ever tell her he paid the claimant anything and she never heard it discussed.

Two checks of the decedent, offered by the administrator for whatever probative value they had, were received in evidence. These checks, each for $100, are dated February 24, 1963 and November 30, 1963. In offering them the administrator stated that their purpose was to show that at least up to the time of the date of the last check, November 30, 1963, that Dr. Reich was paid in full. The court stated that he would allow the checks into evidence but that he could not draw the conclusions of the administrator.

The administrator read the evidentiary deposition taken in California of Andy Rice, Jr., a nephew of decedent who testified that he met Dr. Reich on the morning of decedent's funeral, while in the company of Irving Fenchel, in the lobby of the Park Lane Hotel while waiting for the limousine; that from the conversations he knew that claimant had treated his uncle; that to the best of witness' recollection the conversation between Dr. Reich and Fenchel was as follows:

"Mr. Fenchel said that, 'He died in my arms. . . . He was such a wonderful man, he was my friend all his life, and I loved him.' And the Doctor said, 'Yes, Irv, you were real good, real kind with him.' Then Mr. Fenchel said, 'I know that you are owed three hundred plus, three hundred plus dollars, I don't know exactly the amount, but I know it was three hundred some odd dollars.' 'As soon as this thing is settled, you will get your money.' And the Doctor says, 'Oh, don't worry about it.' "

231

Rice further testified that there was no further conversation; that they were going to the funeral; that the Doctor did not say anything to him directly, but that the amount of money, just the way he said it, left an impression on him because it seemed unusual that they would bring up money; that they talked money the morning of the funeral; that claimant indicated his assent to Fenchel's statement, saying "Forget it, don't worry about it," and that no one else was present during this conversation. Fenchel, under cross-examination, following his testimony in chief, denied that there was any conversation between himself, Dr. Reich and Andy Rice on the morning of the funeral. In this cross-examination Fenchel denied that he told Dr. Reich the day after the funeral that he, Fenchel, would see to it that Dr. Reich was paid $300 for his services.

 The first point advanced by the administrator is that claimant's burden was to establish his claim beyond a reasonable doubt. We have examined the authorities as to the proof required in establishing claims against decedents' estates. We think that the following excerpt from Floyd v. Estate of Smith, 320 Ill App 171, at page 172, 50 NE2d 254, expresses the Illinois rule:

> "At the very inception of defendant's contentions that this judgment should be reversed our attention is directed to the fact that claims against estates of deceased persons should be scrutinized with care and not be permitted to prevail except upon clear proof. We are aware of this provision of the law and recognize that before an allowance can be made of a claim for services to the decedent it is essential that either an express or an implied contract or obligation on the part of the decedent be established by a preponderance of the evidence. (McAuley v. O'Connor, 92 Ill App 592), and, under the law, the burden of proving a contract or obligation against

the estate of decedent is upon the claimant. (In re Estate of Teehan, 287 Ill App 58.)"

See also 34 CJS, p 285, Sec 452(2), Executors and Administrators. The claimant was not required to prove his claim beyond a reasonable doubt.

■ The second contention of the administrator is that our courts will take judicial notice that physicians' bills are customarily rendered monthly. The record contains no testimony that physicians' bills are customarily rendered monthly. In Kelly v. Carroll, 223 Ill App 309, the court said that the custom must be generally known and established and so well settled and so uniformly acted upon as to raise a fair presumption, that it was known to both contracting parties and that their contract was made upon the basis of the existence of the custom. The trial judge was not required to take judicial notice of the asserted custom, and we do not think that we should do so.

■ ■ We turn to the argument that claimant had the burden of overcoming a presumption that he had received payment for much of his earlier care and that claimant admitted that he had only "three hundred some odd dollars" coming. The burden of proof of payment rests upon the administrator who has asserted it. This burden required the administrator to prove that the decedent had discharged his debt to Dr. Reich. Boon v. Estate of Edmund Bliss, 98 Ill App 341, 344; Andrews v. Votaw, 240 Ill App 311, 321. Fenchel in his testimony explained the two checks for $100 each as charitable contributions. The claimant observes that if these checks were available there should have been other evidence of payment among the records and effects of the decedent and that the failure of the administrator to produce any other evidence supports an inference that none existed. We think that the trial court was correct in deciding

that the administrator did not sustain the burden of proof that payment of Dr. Reich's account had been made.

■ The administrator asserts that the trial magistrate erred in refusing to allow cross-examination of claimant's witness, Fenchel, and made a like error as to Selma Samuel, who was not permitted to testify whether she had a claim or would testify on behalf of Fenchel. The administrator says that he can "only assume that the answers would have been in the affirmative." In the absence of an offer of proof we cannot say that the magistrate committed reversible error in his ruling. The allowance or disallowance of a claim by Dr. Reich would not necessarily affect claims by both or either witness and would tend to introduce an immaterial issue.

■ The administrator states that the court erred in receiving the opinions of claimant's witness Fenchel that claimant visited decedent 150 to 160 times and of Miss Samuel that he (claimant) visited decedent from 75 to 100 times. The testimony was within the personal knowledge of these witnesses who were in the apartment when Dr. Reich called to treat the decedent. The testimony of these witnesses was as to the fact of the visits and was not opinion testimony.

■■ The case was tried without a jury. We will not substitute our findings of fact for the findings of fact of the trial court unless these findings are against the manifest weight of the evidence. The trial magistrate accepted the testimony of Irving Fenchel and Selma Samuel and the explanation by Fenchel as to the two checks and did not give credence to the testimony of Andy Rice, Jr. The record supports the order. Therefore the order is affirmed.

Order affirmed.

BRYANT, P. J. and LYONS, J., concur.