SHERIDAN B. JONES, Plaintiff and Counterdefendant-Appellant, *v.* HUBERT M. HENDRICKS *et al.*, Defendants and Counterplaintiffs-Appellees.—(ROY MERRILL *et al.*, Defendants.)

Fourth District    No. 17270

Opinion filed February 4, 1982.—Modified on denial of rehearing March 17, 1982.

Lewis, Blickhan, Longlett & Timmerwilke, of Quincy, for appellant.

Robert A. Jones, of Rushville, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

After a bench trial in the circuit court of Brown County of a suit as to a disputed boundary, the court entered a declaratory judgment on February 9, 1981, in favor of defendants, Hubert M. Hendricks and Marilyn Joyce Hendricks, and against plaintiff, Sheridan B. Jones. The judgment declared that the boundary line between properties owned by the parties was a line described in the evidence as the center line of an old township road and that defendants were the owners of a tract north of that road and south of the true boundary line between the properties. Plaintiff appeals. We reverse.

Defendants' claim was based upon the alternative theories of adverse possession and the existence of a boundary line expressly or impliedly agreed upon by the parties or their predecessors and which now estops plaintiff.

■■ The undisputed evidence was that the area in question between the old township road and the true boundary line was subject to a life estate in plaintiff's mother, Evelyn Padgett, from at least 1939 until 1976 when she conveyed her life estate to plaintiff. The "bodily heirs" of Evelyn Padgett had vested remainders. Since plaintiff is a member of that class, he had a vested remainder interest in the property as well as a life estate *pur autre vie*. No evidence was presented of adverse possession of the tract before 1939. When adverse possession does not commence prior to the creation of a life estate, the statute of limitations does not run against the remainder interests during the life estate. (*Melliere v. Kaufmann* (1968), 93 Ill. App. 2d 242, 236 N.E.2d 147.) Thus, no adverse possession against the remainder interests could have begun before suit was filed. Accordingly, the theory of adverse possession does not support the judgment.

Addressing defendants' alternative theory, we note that the evidence fails to show any express boundary line agreement at any time. The question of whether there was an implied agreement is more complex.

In *McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 235, 174 N.E.2d 869, 871, it is stated:

> "Where a boundary between two tracts is unascertained or in dispute, the line may be established, first by parol agreement and possession; second, by an agreement implied from unequivocal acts and declarations of the parties and acquiescence for a considerable period of time; and third, in the absence of any agreement, by undisturbed possession for more than twenty years. When an

unascertained or disputed boundary is actually established under either or all of these alternative methods, it will be binding on the parties and their privies in estate and may be enforced or protected in an appropriate action in equity."

The foregoing theory was further clarified in *Ginther v. Duginger* (1955), 6 Ill. 2d 474, 482, 129 N.E.2d 147, 151:

"[T]his rule also applies only where there is a dispute as to the line or where the line is unascertained. If the line is not in dispute and the intention of the parties is merely to determine the exact or true line, and in so doing an erroneous line is agreed upon by accident or mistake, the agreement will not be binding and the line will not be established merely because of the agreement previously entered into between the parties. In such a case there is a failure to find the true line through accident or mistake and not an agreement to adopt an unascertained or disputed line; hence the same rule does not apply with reference to possession, estoppel, etc."

In both *McLeod* and *Ginther* there was a clear and unequivocal basis for establishing the situs of the boundary line, and both cases involved clear and unequivocal possession or acquiescence.

■■ Initially we state our belief and hold that, just as adverse possession must have commenced prior to the creation of a life estate to run against the remainder, so must an agreement, explicit or implied, to establish a disputed or unascertained boundary, accompanied by possession or acquiescence, exist prior to the creation of the life estate to affect the remainder interest. The adverse possession limitation is based upon the rationale that the remainderman has no right to possession and therefore cannot bring an action to protect his interest against adverse possession. Similarly, the remainderman cannot depend upon the life estate holder to protect his interests against a boundary line agreement. The remainder-man cannot bring an action to challenge any boundary line agreement made by and acquiesced in by the life estate holder.

■■ It is basic property law that a life estate holder cannot convey a greater interest in the property than is possessed by the life estate holder. (*Miller v. O'Neil* (1977), 47 Ill. App. 3d 340, 361 N.E.2d 1165.) Although the effect of the boundary line agreement rule is not to convey title to the real estate from one party to the other, which cannot be done by parol, the express or implied agreement is valid for the purpose of fixing the location of an unascertained or disputed boundary. (*Purtle v. Bell* (1907), 225 Ill. 523, 80 N.E 350.) Since the effect is the same, the life estate holder should no more be able to affect the interests of the remainderman by an agreed boundary line than he should be able to through conveyance or adverse possession. Following the analogy to adverse possession, such a boundary line agreement should be binding upon the remainderman only

if the person through whom the remainderman obtained his interest had made such an agreement and acquiesced therein prior to the creation of the life estate.

The only evidence even remotely relevant to a boundary line agreement prior to the creation of the life estate are statements of two witnesses concerning what was "considered" to be the boundary. Evelyn Padgett testified that she "just thought" the township road was the boundary line, although she did not really know where the line was until the land was surveyed. Another witness testified that the general community always considered the road to be the boundary line. There is no evidence that the boundary line was truly in dispute or unascertained. There is no evidence that previous owners of the properties agreed, explicitly or implicitly by unequivocal acts, upon the township road as a boundary line. There is no evidence of possession or acquiescence in accordance with any township road boundary line prior to the creation of the life estate. Therefore, defendants' argument fails.

The judgment of the trial court fixing the boundary from the fence post at the center of the abandoned township road and running east is reversed. The cause is remanded to the circuit court of Brown County to enter an order defining the boundary line in accordance with the survey plat which appears as plaintiff's exhibit No. 2 and declaring plaintiff the legal titleholder of certain property as legally described in paragraph 1 of plaintiff's second amended complaint.

Reversed and remanded with directions.

LONDRIGAN and TRAPP, JJ., concur.