*In re* ESTATE OF VINCENT PANZECA, Deceased (Consiglia Panzeca, Petitioner-Appellee, v. Natale Panzeca, Indiv. and as Ex'r of the Estate of Vincent Panzeca, Deceased, Respondent-Appellant).

First District (5th Division)   No. 1—87—3511

Opinion filed August 4, 1989.

Patrick M. Loftus, of Hubert J. Loftus, Ltd., of Addison, for appellant.

Matthew A. LaSusa, of LaSusa & LaSusa, of Des Plaines, for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Decedent Vincent Panzeca died testate on June 30, 1982. He had previously drafted and properly executed his own will in July 1981. Petitioner Consiglia Panzeca is his surviving spouse, and respondent Natale Panzeca, a son from testator's first marriage, was named executor in the will. Testator was survived by his second wife (petitioner), four children of his first marriage, and an adopted daughter.

After providing for payment of debts and expenses, a $5,000 bequest to a grandson, and other dispositions, the will contained the following paragraphs, the meaning of which is disputed in this case.

"I order and direct that my present wife CONSIGLIA PAN-ZECA, at my death, shall be usufructuary, while she is living, of the house that I own here in Chicago, and of the rest of my estate, real, personal, or mixed, of whatsoever nature, kind or sort, and wheresoever situated, to which I may be entitled, or which I may have power to dispose of at my death.

At the death of my wife CONSIGLIA PANZECA, all my estate, as described in the preceding paragraph, shall be divided as follows: One half (fifty percent) to my daughter from my first marriage, ANNA PANZECA. The remaining one half (fifty percent) shall be divided in equal shares, among the following four persons:

1) NATALE PANZECA, my son from my first marriage;
2) GEORGE PANZECA, my son from my first marriage;
3) JOSEPHINE CAMPISI-PANZECA, my adopted daughter;
4) GIOVANNI CAMPISI, my step-son."

The parties agree that petitioner's interest in the real estate is identical to that of a life estate. They also agree that petitioner is entitled to the interest generated by the rest of the estate, which consists of cash assets totalling approximately $33,000. The sole issue in this appeal is whether petitioner, as usufructuary of the estate, is entitled to spend the principal ($33,000). The trial court, relying on Louisiana law for guidance in interpreting "usufruct," held that petitioner is entitled to expend the principal subject to a no-waste proviso, and that an accounting be made at the end of her term as usufructuary (upon her death).

After denial of his motion to reconsider and motion for modification/clarification, respondent appealed. We affirm for the following reasons.

It is clear in this case that the testator gave his wife a usufruct in his entire estate. There is also no dispute that the usufruct in the real estate is to be treated as a life estate. However, the parties cannot agree as to the distribution of the bank accounts totalling $33,000. Respondent argues that Louisiana law should not be relied on to give petitioner a right to expend the principal—she is only entitled to the equivalent of a life estate, *i.e.*, the income or interest therefrom. Petitioner responds that Louisiana law is the proper source to turn to in order for the court to discern testator's intent when he willed a usu-

fruct to his wife.

We agree with petitioner and the trial court's excellent discourse on the meaning of usufruct as it applies to the cash in the estate.

In civil law, usufruct is the right of enjoying a thing, the property of which is vested in another, and to receive from it all the profit, utility, and advantage which it may produce, provided it be without altering the substance of the thing, *e.g.*, house. (La. Civ. Code Ann. art. 536 (West Supp. 1989).) An imperfect or quasi-usufruct is composed of things which would be useless to the usufructuary if he did not consume or expend them or change their substance, *e.g.*, money. (La. Civ. Code Ann. art. 537 (West Supp. 1989).) (Note that although usufruct articles were revised by Louisiana in 1977 and 1981, the provisions relevant to the present case are substantively unchanged, except where noted.) The owner of an imperfect usufruct has a right to dispose of the things at his pleasure, but also has an obligation to return the same quantity, quality, and value to the owner at the expiration of the usufruct. La. Civ. Code Ann. art. 538 (West Supp. 1989).

These Louisiana definitions are similar to many of the civil law countries (*e.g.*, Italy, Greece, Switzerland), and are practically identical to the French Code, from which most of Louisiana law of succession was derived. We must look to Louisiana law since it is the only State in the United States that currently follows the civil law of succession. Usufruct has been interpreted in common law States infrequently, and then usually in connection with water or utility rights. See, *e.g.*, *Clark v. Lindsay Light & Chemical Co.* (1950), 405 Ill. 139 (a person had a right to use and enjoy water from stream flowing through his land as a usufruct, but property rights were vested in another).

Since wills are seldom alike, precedents in other will cases are seldom of controlling importance in determining a testator's intent. (*Stites v. Gray* (1954), 4 Ill. 2d 510.) However, we can examine the application of Louisiana law regarding testamentary usufructs for guidance in determining what the testator meant when he used the word "usufruct" in our case. In other words, we can be guided by Louisiana law as to the meaning of "usufruct" but then must apply that meaning within the context of our rules governing the determination of a testator's intent. This is especially true since several of the underpinnings of the laws of succession in civil law jurisdictions differ greatly from those in common law jurisdictions, such as Illinois.

In Louisiana and civil law countries, the laws of succession generally involve three doctrines: community property, forced heirship, and prohibition of trusts (although Louisiana has now adopted a limited

version of the common law trust). (Comment, *Forced Heirs, The Legitime & Loss of the Legitime in Louisiana*, 37 Tul. L. Rev. 710 (1963).) These doctrines are used to effect the concept of "universal succession," an idea originating in early Roman law and used to ensure that a decedent's estate would pass undivided to his heirs. Based on early social and religious values, universal succession was intended to perpetuate the family and ensure that there would be in existence a person obliged to maintain the family worship and reverence of ancestors; the doctrine's later purpose was to ensure economic provision for a decedent's heirs. (Pelletier & Sonnenreich, *A Comparative Analysis of Civil Law Succession*, 11 Vill. L. Rev. 323 (1966).) Since a forced heir can only be a descendant of a decedent, the usufruct evolved to give a surviving spouse a means of supporting herself and any surviving children. *Hall v. Toussaint* (1900), 52 La. Ann. 1763, 28 So. 304.

This far from complete synopsis of the principles of civil law succession was undertaken to demonstrate the difference between a surviving spouse's position in, for example, Illinois and Louisiana. An Illinois resident has an absolute right to dispose of his property during his lifetime in any manner he chooses, even though the purpose of the transfer is to defeat a spouse's statutory share; such a transfer is valid unless it is a sham or fraudulent. (*Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342.) In the present case, petitioner had the option of election against the will, whereupon she would have received outright ownership of one-third of the estate. See Ill. Rev. Stat. 1981, ch. 110½, par. 2—8(a).

On the other hand, when a decedent in Louisiana is survived by a second spouse and also by children of a first marriage, until recently his powers of disposition were quite limited so as to assure the heirs' forced shares—one-half of his estate if survived by two or more children. (La. Civ. Code Ann. art. 1493 (West Supp. 1989).) Amendments in 1981 liberalized the complex rules so that now a second wife (or husband) can be given a usufruct for life, or until remarriage, in the decedent's entire estate. (La. Civ. Code Ann. art. 890 (West Supp. 1989); see generally Comment, *New Hope for the Survivor: The Changes in the Usufruct of the Surviving Spouse*, 28 Loy. L. Rev. 1095 (1982).) Moreover, unlike Illinois, surviving spouses in Louisiana automatically receive one-half of the community marital property.

Thus, it appears that in civil law jurisdictions, a testator's intent is not the primary consideration in construing a will but is a consideration only as to the disposable portion of his estate (*i.e.*, that portion he would be free to devise to one not an heir). However, the primary

goal of any Illinois court in construing a will is to determine the testator's intent and, if not against public policy, to give it effect. (*Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1.) When a will's meaning is obscure, doubtful, or uncertain, the presumed intention may be determined by using certain rules of construction; the controlling intent is that which is manifest, either expressly or impliedly, from language, and the whole will and all of its parts must be considered in order to ascertain the testator's intention. *Hoge v. Hoge* (1959), 17 Ill. 2d 209.

Moreover, courts will generally prefer construction of a will which most closely follows statutes of descent. (*Continental Illinois National Bank & Trust Co. v. Llewellyn* (1966), 67 Ill. App. 2d 171.) Where there are descendants of decedent and a surviving spouse (in 1981), the spouse receives one-half of decedent's entire estate—real and personal. (Ill. Rev. Stat. 1981, ch. 110½, par. 2—1(a).) However, if we follow respondent's line of reasoning, petitioner would receive nothing under her husband's will but a life estate in their home and interest derived from $33,000.

Looking at the language of testator's will, it appears that he wanted to devise his estate to those of his family who could use the inheritance. He gave $10 to each of two sons by his first marriage, "not because I have no affection towards them, but because they are not in need of my money." He also bequeathed $5,000 to a grandson. He gave his wife a usufruct in all of the property over which he had the power of disposal. Then, after these instructions, at the death of his wife, all of his estate, as described in the usufructuary clause, was to be divided in shares—50% to a daughter of his first marriage and the remaining 50%, in equal shares, to two sons from his first marriage and to his adopted daughter and a stepson.

This very careful division of testator's estate leads us to conclude that he was aware that, were he in a civil law jurisdiction, only his direct descendants (and adopted child) would inherit after the usufruct terminated and, further, the shares would differ from his allocations. From this disposition, we can also infer that he was aware that, under Illinois law, he was not required to abide by the forced heir doctrine. Accordingly, we can also presume that testator expected the usufruct to be applied as it is usually applied under civil law. Thus, respondent's argument that we must apply "life estate law" to interpret what testator intended when he used the word "usufructuary" is not consistent with our rules of construction.

■ In Illinois, intention of a testator is to be determined by giving effect to every word, phrase, and clause in the will, if possible. (*In*

*re Estate of Bridges* (1983), 95 Ill. 2d 383.) No applicable language can be ignored and no words, clause, or language should be arbitrarily rejected as meaningless, insignificant, or surplusage. (*Untz v. Untz* (1979), 74 Ill. App. 3d 133.) Moreover, a testator is presumed to have known the law in force when the will was drafted and to have made the will in conformity with that law. (*In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910.) Testator's will was drafted in 1981. At that time, life estates were commonly utilized in Illinois wills. Yet testator chose to grant his wife a usufruct instead of a life estate. Pursuant to our rules of construction, we cannot ignore his choice of the word "usufructuary" instead of "life estate."

We admit that Louisiana law is not controlling in this case. However, in construing the term "usufruct," which is foreign to our laws of succession, we must look for guidance to a civil law jurisdiction for the accepted meaning of the word. Louisiana is the only such jurisdiction in this country although, as noted before, other civil law jurisdictions are, for the most part, similar in their application of usufructs.

In 1981, most of the Louisiana cases concerned with applying a testamentary imperfect usufruct concluded that a surviving spouse was entitled "to spend or dispose of the moneys subject to the usufruct at her pleasure." (*Mariana v. Eureka Homestead Society* (1935), 181 La. 125, 133, 158 So. 642, 645.) Despite respondent's contentions, the *Mariana* rule is still followed today. However, it must be noted that the usufructuary's right to spend the cash is subject to her obligation to return "the same quantity, quality and value to the owner, or their estimated price, at the expiration of the usufruct." (La. Civ. Code Ann. art. 549 (West Supp. 1989).) Also, a usufructuary should not commit waste. (La. Civ. Code Ann. art. 623 (West Supp. 1989).) The returning of the same value is accomplished by the rendering of an accounting to the "naked owners" (heirs) at the termination of the usufruct, *i.e.*, they must look to the usufructuary's estate for an accounting of the expended funds. *Fenger v. Cagnolatti* (La. App. 1974), 292 So. 2d 901.

This contradiction was discussed in *Stewart v. Usry* (5th Cir. 1968), 399 F.2d 50 (tax case to determine whether an imperfect usufruct qualified for the marital deduction for Federal estate taxes). Therein the court stated that "[a]lthough, as a practical matter, a surviving spouse may completely deplete, by use, disposition, or otherwise, the property which she is allowed to use and enjoy, the reverse inference is true also—she may not so deplete the property." (399 F.2d at 56.) The court concluded that the usufruct did not qualify for a deduction because, even if the spouse consumed all of it, she could not

deprive the heirs of their inheritance since, at her death her estate would be required to account to them. (399 F.2d at 57.) Respondent argues that *Stewart* holds that a usufructuary's right to dispose of property is not absolute. This is correct but limited. The *Stewart* ruling qualifies the spouse's ownership by stating that it is not absolute since it is subject to an accounting at the *end* of the usufruct.

■ Accordingly, since the Louisiana application of usufruct would give a result more closely aligned with our statutes of descent, and since we presume the testator knew the commonly accepted (in civil law jurisdictions) application of a usufruct, we must affirm the trial court's finding that petitioner is entitled to use the income and consume and dispose of the cash assets subject to a duty not to waste, to render an accounting, and, if necessary, to provide restitution from her estate at the expiration of the usufruct.

Affirmed.

LORENZ and COCCIA, JJ., concur.