# Illinois Official Reports

## Appellate Court

*In re Estate of Bozarth*, 2014 IL App (4th) 130309

| | |
|---|---|
| Appellate Court Caption | In re: the Estate of FRANCES BOZARTH, Deceased, DENISE BOZARTH and LOREN BOZARTH, Cotrustees for the Harold D. Bozarth Residual Trust; and LOREN BOZARTH, Individually, Petitioners-Appellants, v. JANET QUAIN and MARCIA SHANK, Coexecutors of the Estate of Frances Bozarth, Deceased, Respondents-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0309 |
| Filed | January 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal arising from a dispute over a will in which petitioners' grandfather left his "mortgages, notes[s] and cash" to their step-grandmother "to use and enjoy" during her lifetime, with the remainder going to petitioners, the trial court erred in denying petitioners' claim to the full amount of the financial assets bequeathed to petitioners' step-grandmother on the ground that she had the right to consume those assets during her lifetime, since Illinois law, pursuant to *Quigley*, provides that when life-estate property consists of cash or its equivalent, as in the instant case, the life tenant is entitled to consume the interest during her lifetime, but not the principal, and in the instant case, the remaindermen were entitled to "all that remains," meaning the remains after the payment of the testator's debts, end-of-life expenses, and a $5,000 bequest to his son. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 10-P-305; the Hon. Elizabeth A. Robb, Judge, presiding. |

| Judgment | Affirmed in part and reversed in part. |
|---|---|
| Counsel on Appeal | Russell E. DePew (argued), of DePew & Dehn, of Bloomington, for appellants. |
| | Allen L. DeVary (argued), of Hartweg, Turner, Wood & DeVary, P.C., of Bloomington, for appellees. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. Justices Pope and Knecht concurred in the judgment and opinion. |

## OPINION

¶ 1   This appeal involves a claim for $100,800.79 brought by the children of Robert Bozarth (petitioners) against the estate of Robert's stepmother, Frances Bozarth. When Robert's father, Harold Bozarth, died in 1983, he bequeathed all of his personal property to Frances "to use and enjoy" during her lifetime, with the remainder to Robert's children. As executrix of Harold's estate, Frances filed a final report indicating that she personally received, among other pieces of real and personal property, $100,800.79 in "mortgages, notes[,] and cash" from Harold's estate. Frances died in October 2010. In June 2011, petitioners filed a claim against Frances's estate seeking recovery of the $100,800.79 in life-estate property referenced in the final report.

¶ 2   Following a November 2012 hearing, the trial court denied petitioners' claim, finding that (1) petitioners failed to prove by a preponderance of the evidence what exactly the personal property listed in the final report consisted of, and (2) even if petitioners were able to identify the personal property referenced in the report, Frances had the right to consume that property during her lifetime.

¶ 3   Petitioners appeal, arguing that (1) the trial court erred by finding that they failed to identify the personal property referenced in the final report, and (2) Frances was not entitled to consume the principal of those financial assets during her lifetime. We affirm in part and reverse in part.

¶ 4                              I. BACKGROUND
¶ 5                              A. The Parties
¶ 6   Harold and Frances married in 1956. They lived together on Harold's farm until Harold's death in February 1983. Although Harold and Frances had no children together, Harold had a

son, Robert, from a previous marriage. Robert had five children prior to Harold's death: Loren Bozarth, Randy Bozarth, Douglas Bozarth, Dee Ann Gragg, and Denise (Bozarth) Smith.

¶ 7                                B. Harold's Will and the Probate Proceedings

¶ 8        Harold's will, which he executed in October 1974, provided, in pertinent part, as follows:

"SECOND: After the payment of my just debts and burial expenses, I will, devise and bequeath all of my property of every kind, nature, and description, and wherever situated, and any property in which I have an interest, to my beloved wife, Frances Bozarth[,] to be hers to use and enjoy for and during the term of her natural lifetime.

* * *

FOURTH: At the death of my wife, all that remains of my estate *** I will, devise[,] and bequeath the same to any trustee nominated by my said wife, *** and all such property shall be held for the benefit of my son[,] Robert F. Bozarth[,] and the heirs of his body until the youngest of his children attains the age of forty years, at which time the entire corpus, and any accumulation, shall be distributed equally among my grandchildren, after which the trust shall cease."

(We note that all of Robert's children attained the age of 40 years prior to Frances's death.)

¶ 9        On March 2, 1983, Harold's will was admitted to probate and Frances was appointed executrix. On that same day, Frances filed an inventory of Harold's real and personal property, which consisted of a list of five assets: (1) a Corn Belt Bank checking account worth $5,585.43; (2) a Corn Belt Bank "purchase agreement" worth $50,000; (3) a Corn Belt Bank money market account worth $45,215.36; (4) an interest in an oil well in Mount Carmel, Illinois; and (5) Harold's farm, which consisted of 225.3 acres in McLean County, Illinois. The inventory did not include a dollar value of Harold's farm or his interest in the oil well. The value of the Corn Belt Bank assets totaled $100,800.79.

¶ 10       In August 1984, Frances filed a final report as executrix of Harold's estate in which she stated, in pertinent part, that she personally received (1) joint tenancy property worth $215,158.99; (2) "mortgages, notes and cash" worth a total of $100,800.79; and (3) "personal property including grain and other items of personal property" worth a total of $67,248.38. Frances also indicated that, pursuant to the terms of Harold's will, she paid $5,000 to Robert and a further $23,555.44 to other parties for Harold's end-of-life expenses, such as burial costs and attorney fees.

¶ 11                               C. Frances's Death and the Probate Proceedings

¶ 12       Frances died in October 2010 and, on Robert's petition, her will was admitted to probate that same month. Robert asserted in his petition for probate that Frances's estate included approximately $357,274.46 in personal property and $780,000 in real property. Robert accepted the office of executor.

¶ 13                              1. *Petitioners' Claims Against the Estate*

¶ 14        In June 2011, petitioners filed four claims against Frances's estate. The first three claims are not at issue in this appeal. Petitioners brought the fourth claim in their individual capacities as Robert's children.

¶ 15        In the fourth claim, which consisted of two parts, petitioners asserted that they, as remaindermen, were entitled to personal property that Frances received from Harold and held as a life tenant, specifically (1) "mortgage notes and cash in the amount of $100,800.79" and (2) "personal property, including grain and other items of personal property in the amount of $67,248.38." (On appeal, petitioners have forfeited the second part of their claim by failing to challenge the trial court's ruling as to the $67,248.38 in grain and other items of personal property. Although petitioners asserted at oral argument that they were entitled to the full $168,049.17, the arguments in their brief focus exclusively on the $100,800.79 claim for mortgages, notes, and cash. See *Vancura v. Katris*, 238 Ill. 2d 352, 369, 939 N.E.2d 328, 340 (2010) ("[T]he failure to argue a point in the appellant's opening brief results in forfeiture of the issue.").)

¶ 16        Robert died in September 2011, after petitioners filed their claims but before the hearing. Pursuant to Frances's will, the trial court appointed Quain and Shank as successor co-executors of Frances's estate.

¶ 17                              2. *The Hearing on Petitioners' Claims*

¶ 18        In November 2012, the trial court conducted a two-day hearing on the petitioners' claims. During that hearing, the vast majority of evidence presented related to the claims not at issue in this appeal. In support of their claim for the $100,800.79 in "mortgages, notes and cash" at issue, petitioners offered into evidence (1) Harold's will, (2) the inventory Frances filed when Harold's will was admitted to probate, and (3) Frances's final report as executrix of Harold's estate.

¶ 19        At the close of the hearing, petitioners argued that Harold's will made Frances a testamentary trustee of the $100,800.79 of financial assets at issue, and that Frances had certain fiduciary duties as to that property from the time of Harold's death in 1983 until her own death in 2010. However, conceding that Harold's will was likely insufficient to establish a *bona fide* testamentary trust, petitioners argued in the alternative that Frances held a life estate in the $100,800.79 of financial assets, and that as the holder of the life estate, she was not entitled to consume the principal. (Petitioners also conceded that, pursuant to Harold's will, their recovery should be reduced by $28,555.44 to account for the $5,000 bequest to Robert and the $23,555.44 cost of Harold's end-of-life expenses.)

¶ 20        The estate argued that, despite the single reference in Harold's will to Frances as a "trustee," the will did nothing to establish a testamentary trust in the property at issue. The estate asserted that, as the holder of a life estate, Frances was entitled to consume the life-estate property because, otherwise, Frances could not "use" and "enjoy" it as Harold intended.

¶ 21        Following the presentation of evidence and argument, the trial court took the matter under advisement.

¶ 22                           3. *The Trial Court's Ruling on Petitioners' Claims*

¶ 23      In January 2013, the trial court entered a 10-page written order, denying the petitioners' claims. The court, citing *Thompson v. Adams*, 205 Ill. 552, 556-57, 69 N.E. 1, 2-3 (1903), found that although Harold's will referred to Frances as a "trustee," neither the will nor any action of Frances ever properly established her as a trustee of either the personal or real property conveyed by Harold's will.

¶ 24      The court then found that the petitioners' claim for $100,800.79 failed for two reasons. First, petitioners had "not proved by a preponderance of the evidence what exactly the personal property listed in the Final Report consisted of." Specifically, petitioners "made no efforts to trace any property or cash or mortgages or notes or other assets which might have been the subject of the listing in the Harold Bozarth Final Report." Second, citing *Walker v. Pritchard*, 121 Ill. 221, 12 N.E. 336 (1887), the court found that even if petitioners did identify the personal property referenced in the August 1984 final report, Frances had the right to consume such things in the life estate because they cannot be enjoyed without consuming them.

¶ 25      This appeal followed.


¶ 26                              II. ANALYSIS

¶ 27      On appeal, petitioners argue that (1) the trial court erred by finding that they failed to identify the personal property referred to in the final report and (2) Frances was not entitled to consume the principal of those financial assets during her lifetime.

¶ 28      Initially, we note that although Harold's will created both France's life estate and petitioners' interests as remaindermen, petitioners sought recovery of the life-estate property at issue by filing a claim in the probate proceedings of Frances's will. However, because Frances was only a life tenant, her will was not controlling over the disposition of the life-estate property upon her death. *Jones v. Hendricks*, 103 Ill. App. 3d 1071, 1073, 431 N.E.2d 1361, 1363 (1982) ("[A] life estate holder cannot convey a greater interest in the property than is possessed by the life estate holder."). Instead, upon the termination of a life estate, the title and right of possession vest automatically in the remainderman. Accordingly, to the extent the two wills differed, Harold's will–not Frances's–was controlling over the disposition of life-estate property in this case.


¶ 29                    A. Burden of Proof and Standard of Review

¶ 30      A party bringing a claim against an estate bears the burden of proving that claim by a preponderance of the evidence. *In re Estate of Pohn*, 67 Ill. App. 2d 227, 232-33, 214 N.E.2d 553, 555-56 (1966); *Floyd v. Estate of Smith*, 320 Ill. App. 171, 172, 50 N.E.2d 254, 255 (1943).

¶ 31      When the court's denial of a claim turns upon the trial court's findings of fact, we will reverse only if those findings were against the manifest weight of the evidence. *In re Estate of Lashmett*, 369 Ill. App. 3d 1013, 1021, 874 N.E.2d 65, 71 (2007). However, because petitioners based their claim to the $100,800.79 on documentary evidence only, and because none of the courtroom testimony supported or rebutted that evidence, we review the court's

denial of that particular claim *de novo*. *Rosenthal-Collins Group, L.P. v. Reiff*, 321 Ill. App. 3d 683, 687, 748 N.E.2d 229, 233 (2001).

¶ 32                    B. Petitioners Proved That Frances Took a Life Estate
                              in Corn Belt Bank Assets Worth $100,800.79

¶ 33    Following Harold's death in 1983, Frances filed a sworn inventory in which she stated that Harold's estate contained, in pertinent part, (1) a Corn Belt Bank checking account worth $5,585.43, (2) a Corn Belt Bank "purchase agreement" worth $50,000, and (3) a Corn Belt Bank money market account worth $45,215.36. The total value of those three financial assets was exactly $100,800.79. In August 1984, Frances indicated in her sworn final report that she personally received $100,800.79 in "mortgages, notes[,] and cash" from Harold's estate.

¶ 34    The only reasonable conclusion to be drawn from this evidence is that Frances took a life-estate interest in $100,800.79 worth of Corn Belt Bank financial assets. The petitioners were not required to prove that those specific Corn Belt Bank accounts were still open at the time of Frances's death, nor were they required to trace those assets to cash existing in Frances's estate at the time of her death. Petitioners satisfied their burden by proving that $100,800.79 in financial assets entered the life estate corpus pursuant to Harold's will.

¶ 35              C. Frances Was Not Entitled To Consume the $100,800.79 at Issue

¶ 36    Harold bequeathed all of his personal property to Frances "to be hers to use and enjoy for and during the term of her natural lifetime." Harold's will further bequeathed $5,000 to Robert. The will then provided that at Frances's death, "all that remains of my estate after said $5,000 bequeath to my son *** shall be distributed equally among my grandchildren." Although it might seem plain that the right to "use and enjoy" life-estate property would include the right to liquidate and spend the financial assets at issue, Illinois law provides otherwise.

¶ 37    In *Quigley v. Quigley*, 370 Ill. 151, 152, 18 N.E.2d 186, 187 (1938), the testator conveyed a life estate to her brother using the following language: " 'I hereby give, devise and bequeath to my brother *** all my property, real estate, personal and of whatever form for his personal use during his lifetime.' " The will then provided for the payment of the testator's debts and end-of-life expenses, and directed a payment of $100 to the Catholic Extension Society. *Id*. The will further provided as follows: " 'After the death of my brother, I wish that whatever is left of my estate be divided among my four nephews.' " *Id*.

¶ 38    The life-estate property at issue in *Quigley* consisted of $29,000 worth of capital stock in various corporations, bank deposits, checks, and a promissory note. *Id*. The court held that the language bequeathing the property to the testator's brother " 'for his personal use during his lifetime' " was insufficient to vest the brother with the right to consume the financial assets at issue. *Id*. at 153, 18 N.E.2d at 187. The court was of the opinion "that a gift 'for his personal use during his lifetime' has no different meaning than 'for life.' " *Id*. We find no distinction between this language from the will in *Quigley* and the language of Harold's will bequeathing property to Frances "to be hers to use and enjoy for and during the term of her natural lifetime."

- 6 -

The additional word "enjoy" is not so different from the word "use" so as to give Harold's will a substantively different meaning than the will in *Quigley*.

¶ 39    The *Quigley* court also noted the rule that "when a will creating a life estate contains a subsequent clause granting remaindermen whatever is left of the estate, no power to dispose of the *corpus* of the estate is created unless the expression 'whatever is left' can be given no other reasonable meaning than that of a grant of such power of disposal." *Id*. at 153-54, 18 N.E.2d at 187 (citing *Vanatta v. Carr*, 223 Ill. 160, 168, 79 N.E. 86, 89 (1906)). The court in *Quigley* concluded that the language "whatever is left" referred to whatever was left after the payment of debts, end-of-life expenses, and the $100 bequest to the Catholic Extension Society. *Id*., 18 N.E.2d at 187-88. Similarly here, the language in Harold's will, "all that remains," should be read as referring to all that remains after the payment of Harold's debts, end-of-life expenses, and the $5,000 bequest to Robert.

¶ 40    Finally, the court in *Quigley* addressed the estate's argument that "the character of the testatrix's property is such that unless the power of disposal is granted, the life tenant can receive but little benefit from the estate." *Id*. at 155-56, 18 N.E.2d at 188. Specifically in *Quigley*, the estate argued that $500 of life-estate property was "cash in [the] bank, upon which no interest is being paid, and that it is absurd to think that the testatrix would want [the life tenant] to keep the money on deposit during his entire life just for the benefit of the remaindermen." *Id*. at 156, 18 N.E.2d at 188. The court disagreed, finding this contention "predicated upon an erroneous view of the law." *Id*. The court stated that "[i]t is well settled that a gift of the use of money to a life tenant is a gift of interest and not of the *corpus*." *Id*.

¶ 41    We conclude that the supreme court's decision in *Quigley* controls the resolution of this case. Although we recognize that because "wills are seldom alike, precedents in other will cases are seldom of controlling importance in determining a testator's intent" (*In re Estate of Panzeca*, 187 Ill. App. 3d 251, 253, 543 N.E.2d 161, 163 (1989)), we simply find no distinguishable facts in the record to permit the conclusion that Frances was entitled to consume the financial assets at issue.

¶ 42    In Illinois, when life-estate property consists of cash or its equivalent–such as the Corn Belt Bank assets in this case–the life tenant is entitled to consume the interest that accrues during her lifetime, but not the principal. If the testator intends to grant the life tenant power to invade and consume the principal, he must so state in explicit language. See *Quigley*, 370 Ill. at 153, 18 N.E.2d at 187 (" 'for his personal use during his lifetime' " held inadequate to confer a right to consume the principal); *Welsch v. Belleville Savings Bank*, 94 Ill. 191, 196 (1879) (" 'for her own free, independent and uncontrollable use and benefit for the term of her natural life' " held inadequate to confer a right to consume the principal); *Thompson v. Adams*, 205 Ill. 552, 553, 69 N.E. 1 (1903) (" 'for the sole use and benefit of my wife, Elizabeth Adams, so long as she shall live and remain my widow' " held inadequate to confer a right to consume the principal); *Strickland v. Strickland*, 271 Ill. 614, 616, 111 N.E. 592, 593 (1916) (" 'for her use during the term of her natural life, she to have absolute control of same during her lifetime' " held inadequate to confer a right to consume the principal).

¶ 43    The testator must explicitly grant the life tenant authority to invade and consume the principal of a cash life estate because, as *Quigley* suggests, cash does not fall into the category

of personal property that cannot be enjoyed without consuming it. *Quigley*, 370 Ill. at 156, 18 N.E.2d at 188. The estate, citing the supreme court's decision in *Walker*, 121 Ill. 221, 12 N.E. 336, argues that the $100,800.79 at issue in this case was life-estate property that could only be enjoyed through consumption. In *Walker*, the decedent's will created a life estate in certain items of farm property, including horses, cows, tools, and grain. When the life tenant died after 15 years of life tenancy, none of those specific items of property remained. The court held that "[a] life estate in personal property gives the donee a right to consume such articles as can not be enjoyed without consuming them, and to wear out by use such as can not be used without wearing out." *Id.* at 229, 12 N.E. at 337. The court concluded that during the life-tenancy period "the articles mentioned either died or were worn out, or used and consumed for legitimate farm purposes." *Id.*

¶ 44    Unlike the cash at issue in this case, the personal property at issue in *Walker* was at risk of dying, spoiling, or diminishing in value during the life-tenancy period. In this case, Frances could have simply left the money in the bank and spent the interest that accrued during her lifetime. Moreover, the court in *Quigley* explained additional options available to a life tenant holding a cash life estate:

> "A life tenant has, under proper restrictions, the right to invest and reinvest money or its equivalent in order that his bequest may be made remunerative. It would be idle to say that he must leave such assets dormant. The executor or trustee, as the case may be, is bound to invest the money for the benefit of the usee. If the life tenant desires to have possession of the property he may do so under such reasonable restrictions as the courts may impose. The matter of requiring security is now, ordinarily, one of discretion with the court having jurisdiction over the property." *Quigley*, 370 Ill. at 156, 18 N.E.2d at 188.

As remaindermen, petitioners are entitled to $100,800.79, a sum equivalent to the amount of financial assets that entered into the life-estate corpus at the inception of the life-tenancy period. Whatever interest or return on investment that may have accrued from those assets during Frances's lifetime was hers to use and enjoy.

¶ 45    As a final matter, we note that the issue presented in this appeal concerns but one component of a complicated array of claims petitioners brought against the estate. The vast majority of the parties' evidence and arguments at the hearing focused on claims that the trial court resolved, and from which neither party appealed. Although we reverse the court's judgment as to the narrow issue before us, we wish to express our appreciation for the court's detailed and thoughtful written order, which we found very helpful during our consideration of the issues, evidence, and arguments in this case.

¶ 46                              III. CONCLUSION

¶ 47    For the foregoing reasons, we affirm the trial court's denial of petitioners' claims except as to the $100,800.79 at issue in the fourth claim. In accordance with their concessions at trial and

on appeal, petitioners are entitled to a judgment of $100,800.79, less $28,555.44 for the costs of Harold's end-of-life expenses ($23,555.44) and the bequest to Robert ($5,000).

¶ 48        Affirmed in part and reversed in part.